**In re the MARRIAGE OF Michael B. WOOLLEY, Appellee,**

**and**

**Sheila D. Woolley, Appellant.**

**No. 00CA0128.**

Colorado Court of Appeals, Div. III.

May 10, 2001.

Jeffrey S. English & Associates, Jeffrey S. English, Lakewood, CO, for Appellee.

Donald Chad Goldy, Denver, CO, for Appellant.

Opinion by JUDGE NEY

In this post-dissolution proceeding, Sheila D. Woolley (mother) appeals the trial court's order allowing Michael B. Woolley (father) to move with their daughter from Colorado to Texas and also awarding mother only a portion of the attorney fees she requested. We affirm.

In the 1998 permanent orders, father was awarded sole legal custody of the daughter, but was not allowed to remove her from Colorado without an order of the court. Mother was awarded a minimum of twelve overnights of parenting time per month, depending on father's work schedule as a commercial airline pilot. That decision was affirmed on appeal. *In re Marriage of Woolley*, (Colo.App. No. 98CA2265, January 27, 2000) (not selected for official publication).

On March 1, 1999, father filed a verified motion to remove the daughter from Colorado and relocate to Texas, where he had been commuting to work since the closure of his employer's Colorado base of operations. As grounds, he alleged that mother had failed to exercise even the minimum amount of parenting time, thereby necessitating father's employment of an overnight babysitter. Father noted that a move to Texas would eliminate his lengthy commute and decrease the amount of time the daughter would spend with a babysitter. Furthermore, father alleged that the daughter was frequently tardy to school when in mother's care, and a move to Texas would ensure that the daughter's educational needs would be met.

In response, mother filed, on March 4, 1999, a motion for stay pending appeal of the permanent orders, asserting that the court lacked jurisdiction to hear the removal motion and requesting that the removal issue not be set for hearing.

In May 1999, father filed a "Notice of Hearing on All Pending Matters," stating that on July 29, 1999, the court would hear, *inter alia,* the stay and removal motions, and complete a hearing on mother's request for attorney fees, which had been partially heard in April.

On July 1, 1999, however, the court, denied mother's motion for stay and ordered that the removal motion would be heard on July 29 immediately following the hearing on mother's request for attorney fees. Also on July 1, father filed a supplemental designation of witnesses, which included the daughter's therapist. The therapist testified at the hearing over mother's objection that father's disclosure was not timely.

The court subsequently granted father's request to remove the daughter from Colorado to Texas and modified mother's parenting time. Mother was awarded attorney fees in the amount of $4000, but that amount was reduced to $3550 to account for a credit due father. The court declined to award the entire $49,800 requested for attorney fees incurred through permanent orders.

## I.

Mother asserts various points of error on the removal issue, all of which we reject.

### A.

First, mother contends that the trial court erred in granting the request for removal, because she was given inadequate notice on July 1 of father's designation of the therapist as a witness under C.R.C.P. 26.2. She argues that she was therefore unable to prepare fully for the July 29 hearing. Under the circumstances, we disagree.

C.R.C.P. 26.2(a)(2)(C)(I) provides that in a domestic relations case the disclosure of expert testimony shall be made at least 60 days before the date set for the hearing. *In re Marriage of Antuna,* 8 P.3d 589 (Colo.App. 2000). The rule makes no specific provision for hearings set within shorter time periods. However, C.R.C.P. 16.2, which governs the management of domestic relations cases, provides that certain types of hearings may be set in a more expedited manner. Post-decree or modification matters may be set in fewer than 60 days, and in that event, the list of expert witnesses included in the trial management certificate must be filed "prior to the commencement of the hearing." C.R.C.P. 16.2(d)(3); *see* C.R.C.P. 16.2(d)(2) (trial management certificate includes list of expert witnesses); *cf.* C.R.C.P. 16.2(g) (governing forthwith hearings for matters requiring immediate court action that cannot be handled through normal setting and notice requirements).

These two rules cannot be read in isolation. *See* C.R.C.P. 26.2 committee comment (discussing the interrelationship between C.R.C.P. 16.2 and 26.2). We must, if possible, construe the two rules to give consistent, harmonious, and sensible effect to both and to avoid an inconsistent or absurd result. *See generally In re Marriage of Ford,* 851 P.2d 295 (Colo.App.1993). Furthermore, if the rules cannot be reconciled, and there is a conflict between specific and general rules, the specific provisions control to the extent of the inconsistency. *See generally In re the Custody of C.C.R.S.,* 892 P.2d 246 (Colo.1995).

■ If a hearing is set in the shorter time frame envisioned by C.R.C.P. 16.2, then the 60–day time limit for disclosure of expert witness testimony set forth in C.R.C.P. 26.2 cannot be met. In that case, the more general provisions in C.R.C.P. 26.2 must yield to C.R.C.P. 16.2, which contains specific provisions for post-decree and modification matters subject to a shortened time schedule.

■ Few areas of the law require more expeditious resolution than those involving the residential custody of a minor child. *In re the Custody of C.C.R.S.*, 872 P.2d 1337 (Colo.App.1993) (custody determinations are entitled to expedited treatment), *aff'd*, 892 P.2d 246 (Colo.1995); *see In re Marriage of Francis*, 919 P.2d 776 (Colo.1996) (emotional stability in a child's life is intertwined more closely with the child's residential custody than with legal custody); *G.A. v. C.V.*, 976 P.2d 881 (Colo.App.1999) (under § 14–10–128(1), C.R.S.2000, priority is given to hearings for the allocation of parental responsibilities). Thus, shortening the time frame for hearing a removal motion is certainly within the trial court's discretion. *See* C.R.C.P. 16.2(d)(3) (court may elect to use shortened time schedule).

Here, the trial court recognized that the daughter, who was seven years old at the time of the removal hearing, would have to enroll in a school within a matter of weeks after the July 29 hearing. Deference to the daughter's schedule was entirely understandable, especially given the court's suspicion that mother had filed the motion for stay in order to preclude a hearing on father's removal motion. Therefore, we perceive no abuse of discretion in the court's decision to proceed with the hearing over mother's objection to the shortened time schedule and imperfect disclosure.

Furthermore, mother's failure to object to the July 1 designation of the therapist until the July 29 hearing lends further support to our decision. *See Perkins v. Flatiron Structures Co.*, 849 P.2d 832 (Colo.App.1992) (where plaintiffs waited until time of hearing to object to C.R.C.P. 16 violation of expert disclosure requirement, delay in objecting was properly considered in resolving the issue). And, given that the therapist had been treating the daughter for two years and had testified at the permanent orders hearing, *see In re Marriage of Woolley, supra*, any surprise or prejudice was mitigated. *See Keith v. Valdez*, 934 P.2d 897 (Colo.App.1997) (even though technical requirements of former C.R.C.P. 16 were not met, where the filing served its purpose of timely informing defendants of the evidence to be presented at trial, defendants did not suffer any prejudice, and trial court abused its discretion in imposing sanctions).

### B.

■ Next, mother contends that the therapist was not properly qualified under § 14–10–127(4), C.R.S.2000. We reject this contention.

Section 14–10–127, C.R.S.2000, applies to evaluations performed to assist the court in determining the allocation of parental responsibilities. *See People in Interest of D.C.*, 851 P.2d 291 (Colo.App.1993) (discussing custody evaluations performed under the Uniform Dissolution of Marriage Act). The therapist here was the treating therapist and was designated as a witness to testify as to "her observations of the minor child." Thus, the custody evaluation provisions of § 14–10–127 were not implicated.

### C.

■ Mother also contends that the court erred in entering the removal order, because, under the shortened time frame, she was unable to obtain expert witnesses and an offense-specific evaluation of father. We disagree.

At the hearing, mother requested an offense-specific evaluation of father under C.R.C.P. 26.2(a)(5) in an effort to prove that father had sexually abused the daughter. However, the court found that this issue had been fully resolved at the permanent orders hearing and that there was no basis for any new allegations. This finding, coupled with mother's tardy request, negates any abuse of the court's discretion in denying the request. *See In re Marriage of Antuna, supra*. Likewise, there is no indication that mother tried,

in the time she did have, to obtain expert witnesses.

### D.

Mother's final contention as to the removal issue is that the trial court's imposition of time constraints and its refusal to grant a continuance related to the hearing, was an abuse of discretion. Again, we disagree.

■ The right to a full and fair hearing, including the right to cross-examination, must be afforded to litigants in dissolution proceedings. And, a court's interest in administrative efficiency may not take precedence over this due process right. *In re Marriage of Goldin,* 923 P.2d 376 (Colo.App. 1996).

■ However, where, as here, the hearing spanned two days, and mother's presentation of evidence and argument consumed well over 100 pages of transcript, the time constraints were not unreasonable. *See In re Marriage of Goldin, supra; cf. In re Marriage of Goellner,* 770 P.2d 1387 (Colo.App. 1989) (error to restrict the presentation of wife's case to six hours, when most of that time was used for cross-examination).

■ As to the continuance, a trial court is required to balance competing factors. On one hand, the court must strive to afford all parties their day in court and an opportunity to present all relevant evidence at trial. On the other hand, the court must be careful not to reward a party who fails to make timely disclosures by granting a continuance, because this practice invites abuse. *Todd v. Bear Valley Village Apartments,* 980 P.2d 973 (Colo.1999).

■ Here, while father did not meet the 60–day deadline under C.R.C.P. 26.2, there was adequate explanation for his failure, given the shortened time schedule and the uncertainty as to whether the case would be stayed. However, we find no explanation for mother's not attempting to obtain experts and not objecting to father's disclosure until the time of the hearing. On this record, there was no abuse of discretion in the trial court's refusal to grant a continuance, *see Todd v. Bear Valley Village Apartments,*

*supra* (determination of whether to grant a continuance based on discovery issues is left to the sound discretion of the trial court), especially when further delay might have adversely affected the daughter's stability. *Cf. In re Marriage of Antuna, supra* (no abuse of discretion in failing to impose sanctions for failure to adhere strictly to C.R.C.P. 26.2, even where the issues were merely financial ones not impacting custody).

### II.

■ As to the attorney fees, mother contends that the trial court erred in limiting her award. She asserts that the trial court's order failed to articulate adequately the basis for the amount ordered and, as a result, this renders review of the award meaningless and impossible.

Specifically, she argues that because she suffered physical and emotional abuse at the hands of father throughout the marriage, father created and is responsible for the "bizarre behavior" and "mental and emotional instability" she exhibited throughout this case. Thus, she reasons that, because her problems made her such a difficult client to represent, she incurred more fees, and father should have to pay them. We find no merit to this attenuated line of reasoning.

■ Section 14–10–119, C.R.S.2000, permits the trial court to apportion attorney fees and costs in dissolution and post-dissolution matters based upon the relative economic circumstances of the parties. *In re Marriage of Bohn,* 8 P.3d 539 (Colo.App.2000). Thus, a party's behavior may be considered in awarding fees only to the extent that it might affect the reasonableness and necessity of those fees. *See In re Marriage of Mockelmann,* 944 P.2d 670 (Colo.App.1997); *cf. In re Marriage of Trout,* 897 P.2d 838 (Colo.App.1994) (although court may consider a party's actions in initiating unwarranted proceedings when determining whether to award attorney fees, the award should be primarily a means of apportioning the costs and fees of an action equitably between the parties and not a means of punishing a party).

Here, the trial court specifically rejected father's assertion that fees should be awarded because he "won" the case. The court also noted behavior of both parties that caused some fees to be incurred. The court then balanced the parties' financial circumstances, including mother's current circumstances and the fact that father had paid "immense" amounts for custody evaluations and other litigation expenses. On that basis, the court found an award was justified, but simply disagreed that all of mother's fees were reasonable and necessary. *See In re Marriage of Bregar*, 952 P.2d 783 (Colo.App. 1997) (trial court has broad discretion in awarding attorney fees under § 14–10–119).

Contrary to mother's assertion, the trial court's order, under these circumstances, is more than adequate to permit appellate review. *See In re Marriage of Aldrich*, 945 P.2d 1370 (Colo.1997). We find no basis for disturbing it, nor in extending *Aldrich* to require the trial court to perform a "lodestar" analysis as suggested in the dissent, but not argued by mother.

The order is affirmed.

JUDGE MARQUEZ concurs.

JUDGE TAUBMAN concurs in part and dissents in part.

JUDGE TAUBMAN concurring in part and dissenting in part.

I agree with the majority's analysis in Part I with respect to the removal issue. I write separately to express my disagreement with the majority concerning the trial court's limited award of attorney fees to mother.

The gravamen of mother's contention on appeal is that the trial court did not determine what portion of her claimed attorney fees were unreasonable and unnecessary, and the extent to which its award of attorney fees equalized the parties' financial circumstances. In my view, a trial court must first determine the amount of requested attorney fees which is reasonable and necessary, and it then must apportion that amount based on the parties' relative economic circumstances. Because the trial court did not conduct such an analysis and made insufficient findings, I respectfully disagree with the majority's conclusion in Part II, and I dissent from that part of its opinion.

Section 14–10–119, C.R.S.2000, permits a trial court to apportion attorney fees and costs in dissolution matters based upon the relative economic circumstances of the parties in order to equalize their status and to ensure that neither party suffers undue economic hardship as a result of the proceeding. *In re Marriage of Aldrich*, 945 P.2d 1370 (Colo.1997).

In awarding fees and costs under that section, the trial court "must consider the relative financial status of each party by making findings concerning their relative incomes, assets, and liabilities. The district court then apportions fees and costs in light of the statute's equitable purpose, making findings that explain how and why it arrived at the specific amount of the award." *In re Marriage of Aldrich, supra*, 945 P.2d at 1378 (citation omitted).

In considering an award of attorney fees under § 14–10–119, the trial court must consider not only the reasonableness of the hourly charges, but also the necessity of the services for which the hours were billed. *In re Marriage of Mockelmann*, 944 P.2d 670 (Colo.App.1997). This inquiry is in addition to the inquiry regarding the parties' relative economic circumstances.

Thus, although it has not been so articulated, our case law requires a two-part inquiry for the proper determination of attorney fees pursuant to § 14–10–119. First, the trial court must determine the amount of a reasonable attorney fee, which is usually based upon the "lodestar" amount, the product of a reasonable hourly fee and a reasonable number of hours expended in the litigation. *See Tallitsch v. Child Support Services, Inc.*, 926 P.2d 143 (Colo.App.1996).

Second, pursuant to *Aldrich*, the trial court must consider the relative financial status of each party by making findings concerning their relative incomes, assets, and liabilities. Then, the trial court may apportion fees and costs, after making additional findings explaining how and why it arrived at the specific award.

Here, the trial court made certain findings with respect to the above factors, but it did not follow the procedure outlined above. As a result, as in *Aldrich*, the trial court's findings are not sufficient to support an award of fees under § 14-10-119, and I would remand for further proceedings on this issue.

At the hearing on attorney fees, mother presented expert testimony in support of her request for fees and costs in the amount of $49,800. This amount was in addition to $2,000 in attorney fees that she had been awarded at temporary orders. Mother's attorney billed his time at $150 per hour, a rate mother's expert testified was reasonable, and father agreed.

Mother's expert also testified that the approximately 364 hours mother's attorney had spent in this litigation between January 1997 and September 1998 were reasonable based upon her review of the file and conferences with mother's attorney and his staff. Father vigorously disputed the reasonableness of the number of hours expended in the litigation.

In its findings, the trial court stated that "the court was not persuaded by the testimony of [mother's expert] that all of [mother's attorney's] fees were reasonable and necessary. I am persuaded from what I observe that this is not the case." The trial court also noted that "there must be a limit to reasonable attorney fees," and found that, in light of all of the circumstances of this case, $4,000, less $450 to pay for mother's share of a custody evaluation, was a reasonable fee in addition to the $2,000 awarded at temporary orders.

Father contends, and I agree, that the trial court did not articulate the amount of attorney fees that it felt was reasonable and necessary. Because it did not make such determination, it is impossible on appellate review to determine whether the trial court abused its discretion in awarding attorney fees. This is best illustrated by an example.

If the trial court had determined that not all of mother's attorney fees were reasonable, but that $35,000 was a reasonable amount, a reviewing court could then compare the trial court's consideration of the parties' relative financial circumstances in determining that mother should be awarded $4,000 in attorney fees. In such circumstance, the trial court would need to explain clearly why, given $35,000 in reasonable attorney fees and a significant disparity in income between the parties, an award of only $4,000 in attorney fees was appropriate.

On the other hand, if the trial court determined that only $10,000 of mother's requested attorney fees were reasonable, a reviewing court could also determine whether an award of $4,000 in attorney fees was appropriate in light of the party's relative financial circumstances. In this situation, an award to mother of $4,000 out of $10,000 in reasonable attorney fees might more readily be perceived as equalizing the parties' financial circumstances.

Thus, because the trial court did not determine an amount of reasonable attorney fees in this case, a reviewing court cannot determine whether the trial court properly considered the amount of reasonable attorney fees before considering the parties' relative financial circumstances.

I also conclude that the trial court's findings were insufficient with respect to the parties' relative financial circumstances. As noted, *In re Marriage of Aldrich, supra,* requires the trial court to make findings concerning the parties' relative income, assets, and liabilities. Then it must apportion fees and costs in light of the statute's equitable purposes, and make additional findings that explain how and why it arrived at the specific amount of the award.

Here, the trial court acknowledged the parties' relative financial resources and that father "has immensely superior financial resources to Ms. Woolley. He earns a very high salary. Ms. Woolley is currently on social security disability." However, the court did not make specific findings with respect to their incomes. The testimony at the attorney fees hearing was that father's salary in 1998 was $164,000, while that of mother was approximately $18,000, based on income from social security disability and maintenance.

With respect to assets and liabilities, the trial court noted that mother was awarded

more of the marital property than father. It also noted that father had paid immense expenses for custody evaluations and other litigation expenses. While the court stated that the evidence indicated that mother had depleted her marital property markedly since permanent orders, there was no determination as to whether such depletion, to the extent that it occurred, was reasonable and necessary in light of mother's relatively poorer economic circumstances.

Finally, while testimony was presented at the hearing that father had substantial credit card debt that he was obligated to pay, there was also testimony that he owned residences in both Houston and Denver.

Thus, although the court considered the parties' relative financial circumstances to some extent, here, as in *Aldrich,* the court did not articulate how it arrived at the specific amount of attorney fees awarded and did not explain why the amount awarded served to equalize the economic status of mother and father.

Accordingly, even if I were to assume that not all of mother's requested attorney fees were reasonable and necessary, I still would remand the matter of attorney fees to the trial court for further findings in accordance with the views expressed herein.