The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 16, 2019

## 2019COA76

**No. 18CA0500, *In re Marriage of Aragon* — Family Law — Uniform Dissolution of Marriage Act — Attorney's Fees — Maintenance — Child Support**

The division holds that in determining whether to require one spouse to pay a portion of the other spouse's attorney fees under section 14-10-119, C.R.S. 2018, the court should begin by calculating an appropriate "lodestar" amount. In so holding, the division disagrees with the majority's decision in *In re Marriage of Woolley*, 25 P.3d 1284 (Colo. App. 2001).

The division also addresses how a court should amortize a spouse's lump-sum workers' compensation payment in calculating that spouse's income for maintenance and child support purposes. Where the payment is for wages lost over a discernable period of

time, the payment should be amortized over that period, absent

exceptional circumstances.

Court of Appeals No. 18CA0500
Adams County District Court No. 16DR1172
Honorable Roberto Ramírez, Judge

In re the Marriage of

Vanessa Castillo Aragon,

Appellee,

and

Alain Leonardo Aragon,

Appellant.

ORDERS AFFIRMED IN PART, REVERSED IN PART,
VACATED IN PART, AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE J. JONES
Terry and Grove, JJ., concur

Announced May 16, 2019

Thomas Law Group, P.C., Sergei B. Thomas, Denver, Colorado, for Appellee

Leonard A. Martinez & Associates, PC, Leonard A. Martinez, Lakewood, Colorado, for Appellant

¶ 1    In this dissolution of marriage case between Vanessa Castillo Aragon (wife) and Alain Leonardo Aragon (husband), husband appeals two post-decree orders: a January 28, 2018, order awarding wife attorney fees, and a March 7, 2018, order awarding her child support and maintenance. We vacate the attorney fees order, affirm in part and reverse in part the child support and maintenance order, and remand the case for further proceedings.

## I.  Background

¶ 2    The parties' thirteen-year marriage ended in 2017. They have five children. Under the initial February 2017 permanent orders, the district court ordered husband to pay wife $823 per month in child support and $1,372 per month in maintenance. Those calculations were based on husband then receiving $843 per week in workers' compensation payments for temporary total disability. But because husband was awaiting final resolution of a workers' compensation claim at that time, the court reserved a final decision on property division, child support, and maintenance until the claim was resolved.

¶ 3    In July 2017, husband settled his workers' compensation claim for a lump-sum payment of $171,563, representing 165.34 weeks of pay at the rate of $887.48 per week.

¶ 4    Wife later moved to modify child support and maintenance. She also asked that the issue of attorney fees under section 14-10-119, C.R.S. 2018, be reopened and that husband be ordered to pay $28,583.50 of her fees and costs. The court granted wife's request to reopen attorney fees and ordered husband to pay 75% of her requested fees and costs.

¶ 5    After a hearing, the court determined husband's income by taking his workers' compensation settlement, less the attorney fees he owed to his workers' compensation attorney and the amount set aside for his future medical expenses; prorating that amount over twelve months beginning April 1, 2018; and adding in his income as an Uber driver and from an Airbnb rental property. The court attributed no income to wife and ordered the parties to recalculate child support and maintenance based on husband's income, which resulted in husband owing wife $1,695 per month in child support and $4,170 per month in maintenance. The court noted that child support and maintenance would have to be recalculated on or

2

before April 1, 2019 — the end of the proration period for husband's settlement — and it denied wife's request for additional attorney fees.

## II. Attorney Fees

¶ 6 Husband first contends that the district court erred in awarding wife attorney fees. He argues that claim preclusion bars an award of fees wife incurred for the initial February 2017 proceedings. He also argues, and wife concedes, that the court didn't make adequate findings to support the award under section 14-10-119. And he argues that the court erred by failing to conduct a hearing on fees and by failing to determine the reasonableness of wife's requested fees using the lodestar method.

¶ 7 We agree with both parties that additional findings are necessary concerning attorney fees and remand the case for that purpose, and we agree with husband that the court should apply the lodestar method when determining reasonable attorney fees. But we reject husband's arguments that claim preclusion bars wife from receiving fees she incurred for the initial permanent orders proceedings and that he was entitled to a hearing on wife's request.

## A. Legal Standards

¶ 8    Under section 14-10-119, "[t]he court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount" for the other party's costs, including attorney fees, of maintaining dissolution proceedings. *See In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006) (The statute empowers courts to "equitably apportion costs and fees between parties based on relative ability to pay."). The decision whether to award fees under the statute is discretionary; we won't disturb such a decision absent a showing of an abuse of that discretion. *In re Marriage of Davis*, 252 P.3d 530, 538 (Colo. App. 2011); *see Gutfreund*, 148 P.3d at 141 (noting district court's "great latitude to craft [attorney fee] orders appropriate to the circumstances of a given case").

¶ 9    In awarding fees, a court must make findings concerning the parties' relative incomes, assets, and liabilities; and it must apportion fees based on the statute's equitable purpose, explaining how and why it arrived at the specific amount of the award. *In re Marriage of Aldrich*, 945 P.2d 1370, 1378 (Colo. 1997); *see also In Interest of K.M.B.*, 80 P.3d 914, 917-18 (Colo. App. 2003) ("When

4

awarding attorney fees, the trial court must specifically set forth the reasons for the award . . . .").  The court must also consider the reasonableness of the hourly rate and the necessity for the hours billed.  *In re Marriage of Connerton*, 260 P.3d 62, 67 (Colo. App. 2010); *In re Marriage of Mockelmann*, 944 P.2d 670, 672 (Colo. App. 1997); *In re Marriage of Rieger*, 827 P.2d 625, 625 (Colo. App. 1992); *see also In re Marriage of Newell*, 192 P.3d 529, 537 (Colo. App. 2008) (presuming magistrate considered attorney's fee affidavit and was satisfied that fees were reasonably incurred).

## B.  Analysis

### 1.  Additional Findings Are Necessary Regarding Attorney Fees

¶ 10     As wife concedes, although her motion and the court's attorney fees order are captioned "pursuant to" section 14-10-119, the court didn't make any findings regarding the basis for awarding fees under the statute.  Though the court attached wife's motion to its order, the motion asserts only that wife incurred substantial fees, most of which were "due to [husband's] actions, lack of action, and/or purposely hiding compensation and employment funds."  These factors aren't a proper basis for awarding fees under section 14-10-119.  *See In re Marriage of Woolley*, 25 P.3d 1284, 1288-89

(Colo. App. 2001) (section 14-10-119 award is primarily intended to apportion fees based on the parties' financial circumstances); *see also In re Marriage of Trout*, 897 P.2d 838, 840 (Colo. App. 1994).

¶ 11    Without more specific findings under the statutory standard, we aren't able to meaningfully review the attorney fees order. *See In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008). Thus, we vacate the order and remand the case for additional findings. *See Aldrich*, 945 P.2d at 1380; *K.M.B.*, 80 P.3d at 917.

¶ 12    But the court need not hold a hearing on remand. As wife points out, the parties stipulated that the court would rule on her motion without a hearing. *See In re Marriage of Ensminger*, 209 P.3d 1163, 1167 (Colo. App. 2008) (court doesn't have an obligation to hold a hearing sua sponte on a spouse's request for attorney fees); *see also Maloney v. Brassfield*, 251 P.3d 1097, 1108 (Colo. App. 2010) ("Stipulations are a form of judicial admission" and "are binding on the party who makes them.") (citation omitted).

2. The Court Should Start by Determining a Lodestar Amount

¶ 13    We further conclude that, on remand, the district court should determine a lodestar amount as the starting point when evaluating the reasonableness and necessity of wife's attorney fees. In so

6

concluding, we reject the majority's decision in *Woolley*, 25 P.3d at 1289, to the contrary.  We instead agree with the dissenting judge in that case, who would have required calculation of a lodestar figure in determining fees under section 14-10-119.  *See* 25 P.3d at 1289-91 (Taubman, J., concurring in part and dissenting in part); *see also Visible Voices, Inc. v. Indus. Claim Appeals Office*, 2014 COA 63, ¶ 25 (declining to follow the decision of another division of the court of appeals, and noting that one division of the court isn't bound by another division's decision).  We do so for the following reasons.

¶ 14    The language of the statute clearly limits an award to those fees that are "reasonable."  Though the statute requires the court to consider "the financial resources of both parties," that consideration goes to each spouse's respective obligation — that is, the portion of the "reasonable" fees each spouse should bear.  It doesn't speak to the reasonableness of the fees incurred in the first instance.  So some standard is needed to guide courts in making that threshold determination.  One possible such standard is the "lodestar" approach.

¶ 15 Under the lodestar approach, the court first calculates a lodestar amount, which represents the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 23. After calculating a lodestar amount, the court then has the discretion to make upward or downward adjustments to that amount after considering the relevant factors in Colo. RPC 1.5(a) for determining the reasonableness of attorney fees. *S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons*, ¶ 24. These factors include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Colo. RPC 1.5(a).[1]

¶ 16    The lodestar approach is therefore consistent with case law requiring a court considering whether to award fees under section 14-10-119 to determine a reasonable hourly rate and a reasonable number of hours billed. *Connerton*, 260 P.3d at 67; *Mockelmann*, 944 P.2d at 672; *Rieger*, 827 P.2d at 625. And it is consistent with the equitable purpose of the statute in that it requires adjustments to the lodestar figure for relevant circumstances specific to each case.

¶ 17    On top of that, the lodestar method is tried and true. Indeed, because a lodestar amount "carries with it a strong presumption of reasonableness," *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 18,

---

[1] As discussed below, we modify application of these factors somewhat to account for the nature of proceedings under the Uniform Dissolution of Marriage Act and the purpose of section 14-10-119, C.R.S. 2018.

Colorado appellate courts have adopted the lodestar method for determining attorney fees awards in many other contexts in which, like under section 14-10-119, a party is entitled to recover "reasonable" attorney fees. *See, e.g., Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 386-87 (Colo. 1994) (on party's voluntary dismissal of claim under C.R.C.P. 41(a)(2)); *Blooming Terrace No. 1, LLC v. KH Blake Street, LLC*, 2017 COA 72, ¶ 34 (contractual fee-shifting provision) (*cert. granted* Apr. 9, 2018); *Payan*, ¶ 10 (for successful claim under the Colorado Consumer Protection Act); *Catlin v. Tormey Bewley Corp.*, 219 P.3d 407, 410-11 (Colo. App. 2009) (to prevailing party under the federal Fair Labor Standards Act); *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 151-52 (Colo. App. 2003) (under section 13-17-102, C.R.S. 2018, for bringing a frivolous claim or defense); *Dahl v. Young*, 862 P.2d 969, 973 (Colo. App. 1993) (under section 38-35-109(3), C.R.S. 2018, for filing a fraudulent lien).

¶ 18    The only Colorado case we could find that questions the use of the lodestar method in any context, other than *Woolley*, is *Brody v. Hellman*, 167 P.3d 192 (Colo. App. 2007). In that case, a division of this court noted the "recent trend" among federal courts in

"common fund cases" — class action lawsuits resulting in the recovery of a fund to benefit the class — to use a percentage of the fund method to calculate attorney fees instead of the lodestar method, which the division noted is generally used in "statutory fee-shifting cases." *Id.* at 198, 201, 204. But the division also noted that these courts "crosscheck the adequacy" of the fee calculated using the percentage method "by applying the lodestar method." *Id.* at 201. And the division upheld the trial court's calculation of attorney fees under the percentage method and then also under the lodestar method as a "crosscheck" of the percentage method. *Id.* at 201-02.

¶ 19　　*Brody* recognized that common fund cases are different from cases in which attorneys expect to be paid by the hour. Specifically, common fund cases are like contingency fee cases because of the risk "that attorneys will realize no return for their investment of time and expenses in cases they lose." *Id.* The fees awarded in such cases should therefore compensate attorneys "both for services rendered and for the risk of loss or nonpayment assumed by following through with the case." *Id.*

¶ 20    This rationale for treating the lodestar method only as a "crosscheck" on fees calculated using some other basis doesn't apply to section 14-10-119. Fees incurred in Uniform Dissolution of Marriage Act cases are for services rendered: there is no risk component as in common fund and contingency fee cases.

¶ 21    The majority in *Woolley* rejected the lodestar method summarily. In light of the foregoing considerations, however, we conclude that there is a great deal of merit to applying that method in this context. Doing so will not only provide courts with a tested and approved method of determining "reasonable" fees, it will incentivize counsel to carefully consider, in advance, their time spent on every aspect of the case.

¶ 22    Accordingly, we hold that a district court should apply the lodestar method when determining reasonable attorney fees in the domestic relations context under section 14-10-119. *See Rosen v. Rosen*, 696 So. 2d 697, 699-701 (Fla. 1997) (adopting the lodestar method for determining reasonable attorney fees to award under Florida statute similar to section 14-10-119); *see also Nagl v. Navarro*, 187 So. 3d 359, 361 (Fla. Dist. Ct. App. 2016) ("The lodestar method is an appropriate starting point in domestic

relations cases."). But we do so with the following caveat: the court shouldn't apply the Colo. RPC 1.5(a) factors rigidly, but instead should carefully consider the extent to which those factors apply in a given situation and the extent to which other factors may need to be applied to achieve an equitable result. *See Rosen*, 696 So. 2d at 700.

### 3. Claim Preclusion Doesn't Bar Wife's Request for Fees for the Permanent Orders Proceedings

¶ 23    Husband's argument that the doctrine of claim preclusion (sometimes referred to as res judicata) bars the court from awarding wife fees incurred for the February 2017 permanent orders proceedings is unpersuasive. Claim preclusion bars a party from relitigating a matter that has already been decided or that could have been raised in a previous proceeding. *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005). Its purpose is to prevent needless litigation. *Id.* A claim is precluded, however, only when the court entered a final judgment in the first proceeding. *Id.*

¶ 24    In this case, the district court didn't specifically address wife's section 14-10-119 attorney fees request in the February 2017

permanent orders and didn't award fees. However, the court also reserved the financial issues — the potential division of husband's workers' compensation settlement as marital property, as well as child support and maintenance — for later determination after husband's workers' compensation claim was resolved. Then, after husband received his settlement, the court granted wife's request to reopen the issue of attorney fees. The record doesn't show that husband objected to wife's request to reopen the fee issue. Rather, he raised his claim preclusion argument in his objection to wife's later fee affidavit.

¶ 25    Under these circumstances, assuming without deciding that this argument is preserved, we conclude that claim preclusion doesn't bar wife's fee request. The court contemplated in entering permanent orders initially that husband's pending settlement would change his financial circumstances, and it therefore reserved a final decision on financial issues until the settlement was completed. Claim preclusion doesn't bar the reopened fee determination based on these reserved financial issues because the court hadn't entered a final judgment. *See Argus,* 109 P.3d at 608 (claim preclusion bars subsequent claims only after final judgment).

### III. Income for Maintenance and Child Support Purposes

### A. Husband's Income

¶ 26 Husband also contends that the district court erred by determining his income from his workers' compensation settlement by allocating the amount, less attorney fees and medical expenses, over twelve months beginning April 1, 2018. We agree.

¶ 27 We initially reject wife's argument that husband didn't preserve this contention. Wife argued in her motion to modify that husband's workers' compensation settlement should be allocated over twelve months, but she didn't provide a specific date that the allocation period should begin. Husband objected in his response, contending that the settlement should instead be allocated consistently with the parties' stipulation and that wife's calculation was "off base." In doing so, husband preserved his argument concerning the allocation of the settlement. *See Berra v. Springer & Steinberg, P.C.,* 251 P.3d 567, 570 (Colo. App. 2010) (an issue is preserved when brought to the court's attention, so that the court has an opportunity to rule on it).

¶ 28 Income for the purposes of child support and maintenance includes workers' compensation benefits. § 14-10-114(8)(c)(I)(Q),

15

C.R.S. 2018; § 14-10-115(5)(a)(I)(Q), C.R.S. 2018; *see In re Marriage of Smith*, 817 P.2d 641, 644 (Colo. App. 1991). Husband cites no authority, and we aren't aware of any in Colorado, concerning how a court should include workers' compensation benefits received in a one-time, lump-sum payment in a party's income for purposes of child support and maintenance.

¶ 29 We note initially that husband's reliance on *In re Marriage of Breckenridge*, 973 P.2d 1290 (Colo. App. 1999), is misplaced. That case addressed only the classification of workers' compensation benefits, part of which were paid in a lump sum, as marital or separate property of the receiving spouse. *Id.* at 1290-91. It didn't address how to include the payment as income for purposes of maintenance or child support. Accordingly, it isn't relevant to the issue before us.

¶ 30 Husband's workers' compensation settlement, which was based on a "whole person impairment" rating of 52%, represented 165.34 weeks of lost wages. Consistent with these terms, the parties stipulated in connection with wife's initial motion to modify child support that the settlement amount would be allocated over a 165.34-week period to determine husband's income. The district

court approved the parties' stipulation the day before wife moved again to modify both maintenance and child support, requesting for the first time that the settlement amount instead be allocated over a twelve-month period to determine husband's income.

¶ 31    The district court granted wife's request without explaining why it was departing from the terms of husband's workers' compensation settlement and the parties' stipulation.[2]  We conclude that it abused its discretion in doing so.

¶ 32    As wife points out, other one-time payments are sometimes included in the recipient's gross income for the year in which they were received.  *See In Interest of A.M.D.*, 78 P.3d 741, 746 (Colo. 2003) (inheritance); *In re Marriage of Bohn*, 8 P.3d 539, 541 (Colo. App. 2000) (lottery prize); *In re Marriage of Zisch*, 967 P.2d 199, 202 (Colo. App. 1998) (capital gain).  But, unlike those other types of payments, a workers' compensation settlement is intended as future wage replacement for the injured employee/spouse.  *See*

---

[2] Stipulations "are admissions binding on the parties."  *Cherokee Metro. Dist. v. Upper Black Squirrel Creek Designated Ground Water Mgmt. Dist.*, 247 P.3d 567, 573 (Colo. 2011).  Wife didn't argue any reason in the district court for disregarding her stipulation; she merely made a request inconsistent with that stipulation.

*Loofbourrow v. Indus. Claims Office*, 321 P.3d 548, 554-55 (Colo. App. 2011) ("The overall purpose of the statutory scheme is to calculate 'a fair approximation of the claimant's wage loss and diminished earning capacity.'") (citation omitted), *aff'd sub nom. Harman-Bergstedt, Inc. v. Loofbourrow*, 2014 CO 5; *Emp'rs Fire Ins. Co. v. Lumbermens Mut. Cas. Co.*, 964 P.2d 591, 594 (Colo. App. 1998) ("[U]nder the Workers' Compensation Act, an injured employee is entitled to receive wage replacement benefits . . . ."); *see also In re Marriage of Swan*, 526 N.W.2d 320, 325 (Iowa 1995) ("Workers' compensation benefits are not a windfall. They are directly related to the worker's former earnings and his or her ability to earn income in the future."). And the amount of benefits is computed based on the injured employee's average weekly wage. *See* § 8-42-102(1), C.R.S. 2018; *Benchmark/Elite, Inc. v. Simpson*, 232 P.3d 777, 779 (Colo. 2010).

¶ 33    Because husband's workers' compensation settlement represents a replacement for his lost wages due to his injury and was calculated based on his average weekly wage over 165.34 weeks, we conclude that the settlement amount should be allocated consistently with these terms in determining husband's income for

child support and maintenance purposes. *See Swan*, 526 N.W.2d at 325-26 (apportioning workers' compensation award over 126 weeks, consistent with its terms, when calculating the recipient parent's income for child support purposes). The court's decision to instead use a twelve-month allocation period — inexplicably beginning nine months *after* the date husband received the settlement — not only deviates from the parties' stipulation, it effectively penalizes husband for suffering a compensable work-related injury. It does so by taking wages that, had husband not been injured, would have been earned over a period of 165.34 weeks, and would have been treated as being earned over that period for purposes of calculating husband's income, and instead treating them as if they had been earned over a period of fifty-two weeks, merely because husband received them in one lump-sum payment due to his injury. This seems the very definition of arbitrary and thus can't stand. *See In re Marriage of Gromicko*, 2017 CO 1, ¶ 18 ("A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair.").

¶ 34    We recognize that other courts have used different methods to apportion a workers' compensation settlement. *See, e.g., Mayfield*

19

*v. Mayfield,* 989 N.E.2d 601, 607-08 (Ill. 2013) (ordering lump-sum child support payment of 20% of settlement amount); *Becker v. Becker,* 573 N.W.2d 485, 491 (Neb. Ct. App. 1997) (apportioning settlement amount over remaining period until the youngest child emancipated); *In re State,* 904 A.2d 619, 626 (N.H. 2006) (apportioning settlement amount over recipient's life expectancy). But absent "unique facts" not apparent in the record, we conclude that the preferable method is to apportion such a settlement consistent with its terms, meaning over the number of weeks of lost wages that the lump-sum settlement represents. *But cf. In re Marriage of Sullivan,* 853 P.2d 1194, 1198-99 (Mont. 1993) (including settlement amount in recipient's income for the year it was received when the evidence was that the recipient spent the entire $50,000 settlement within that year).

¶ 35    On remand, the court should recalculate husband's income consistently with the terms of his workers' compensation settlement and redetermine maintenance and child support accordingly.

¶ 36    Because wife didn't file a cross-appeal, we don't address her argument that the court erred by reducing husband's workers' compensation settlement amount to account for the attorney fees

he incurred in obtaining it and his future medical expenses. *See Koinis v. Colo. Dep't of Pub. Safety*, 97 P.3d 193, 197 (Colo. App. 2003) ("An appellee must file a cross-appeal in order to raise a contention that, if successful, would increase its rights under the judgment or order being reviewed.").

## B. Wife's Income

¶ 37 Last, husband contends that the court abused its discretion by failing to impute income to wife. We disagree.

¶ 38 "[B]oth parents have a duty to support their children." *People v. Martinez*, 70 P.3d 474, 477 (Colo. 2003). So if a parent is voluntarily unemployed or underemployed, the court must calculate child support based on the parent's potential income. § 14-10-115(5)(b)(I); *see Martinez*, 70 P.3d at 477. The court must similarly calculate maintenance based on a spouse's potential income if the spouse is voluntarily underemployed or unemployed. § 14-10-114(8)(c)(IV).

¶ 39 Whether potential income should be imputed is a question of fact that depends on the circumstances of the case. So we defer to the district court's findings if they are supported by the record. *Martinez*, 70 P.3d at 480-81.

¶ 40    We conclude that the district court's decision not to impute potential income to wife has record support.

¶ 41    Husband testified that he knew wife earned money by cutting hair at the parties' home, but that he didn't know how much she got paid. Wife admitted that she did this for close friends and received "tips." When the court asked husband's attorney how much income he believed should be imputed to wife for cutting hair, the attorney responded, "[w]e know she has cut hair," but didn't provide an amount. The court then declined to impute income to wife, finding that her work from home was "sporadic at best" and her earnings "de minim[i]s."

¶ 42    The record further reflects that the parties have five children, who, at the time of the income hearing, ranged in age from two to sixteen. The youngest child had attained thirty months only four months before the February 2018 income hearing. *See* §§ 14-10-114(8)(c)(IV), 14-10-115(5)(b)(I) (income shall not be imputed to a parent who is caring for a child under the age of thirty months). Also, wife testified that one of the children had been diagnosed with autism and ADHD and that she couldn't work and care for the child, who had three weekly therapy appointments. Additionally,

wife is from Honduras and doesn't have a work permit to allow her to work legally in this country.

¶ 43   Under these circumstances, we won't disturb the district court's decision not to impute income to wife. *Cf. In re Marriage of Foss*, 30 P.3d 850, 852 (Colo. App. 2001) (finding an abuse of discretion when district court imputed full-time income to mother who was caring for one disabled child, including taking the child to two therapy appointments a week).

¶ 44   Last, to the extent husband argues that the district court didn't make the necessary section 14-10-122(1)(a), C.R.S. 2018, findings to modify maintenance, we note that the court reserved jurisdiction to make a final maintenance decision after husband's workers' compensation claim was resolved. Thus, the court's findings, including those in the February 2017 permanent orders, are sufficient to support awarding wife the statutory guideline amount of maintenance. *See* § 14-10-114(3)(a)-(e), (g); *see also In re Marriage of Thorstad*, 2019 COA 13, ¶ 29 (noting that "[a] court can, in specified circumstances, reserve jurisdiction over a maintenance order" and then later resolve the issue under section 14-10-114 instead of section 14-10-122).

## IV.  Appellate Attorney Fees

¶ 45    Wife requests attorney fees on appeal, citing sections 13-17-102 and 14-10-119.  Because she hasn't articulated a factual basis for the request, however, we deny it.  *See* C.A.R. 39.1 (providing that fee claimant must "explain the legal and factual basis" for an award); *In re Marriage of Roddy*, 2014 COA 96, ¶ 32 (merely citing statute under which fees are requested is insufficient).

## V.  Conclusion

¶ 46    The January 28, 2018, order awarding wife attorney fees is vacated, and the case is remanded for additional attorney fees findings as provided herein.  The March 7, 2018, order determining child support and maintenance is affirmed as to wife's income and reversed as to husband's income, and the case is remanded for the district court to recalculate husband's income as instructed herein and to redetermine child support and maintenance accordingly.

JUDGE TERRY and JUDGE GROVE concur.

24