24CA1148 Marriage of Loecher 10-02-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1148
Jefferson County District Court No. 22DR30326
Honorable Meegan A. Miloud, Judge

In re the Marriage of

Brittany V. Loecher,

Appellee,

and

Brent Metz,

Intervenor-Appellee,

and

Nikolas R. Loecher,

Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Gomez and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

Gem Family Law, LLC, Steve M. Visioli, Denver, Colorado, for Appellee

Law Office of Heather Mitchell & Associates, LLC, Heather M. Mitchell,
Monument, Colorado, for Intervenor-Appellee

Peak Legal Services, LLC, Todd J. Narum, Northglenn, Colorado, for Appellant

¶ 1    In this divorce proceeding involving Brittany V. Loecher (wife) and Nikolas R. Loecher (husband), husband appeals the marital property and maintenance portions of the permanent orders judgment. He also appeals certain issues related to attorney fees. We affirm in part and reverse in part, and we remand the case for further proceedings consistent with this opinion.

## I.    Background

¶ 2    The parties married in 2010 and have two children. Wife was a homemaker and, late in the marriage, served on a town council, earning $400 per month. Husband was employed full time and provided financially for the family. Wife began a relationship with Brett Metz in 2021; she filed for divorce in 2022. After she filed for divorce, wife received loans from Metz to cover certain expenses (the Metz debt).

¶ 3    Over the course of this case, the district court entered a permanent civil protection order against husband in favor of wife. When husband sought to depose Metz, a nonparty, and repeatedly subpoenaed his financial information, the court granted Metz's request to issue a protective order and quashed the subpoenas.

1

The court ordered husband to pay Metz's attorney fees for litigation related to the subpoenas and protective order.

¶ 4      In 2024, the court held a permanent orders hearing and made an oral ruling.  As relevant here, the court considered, among other things, the "inherited monies that [husband] received," and found that husband's income was $20,000 per month.  The court allocated the Metz debt to wife.  Several months after the oral ruling, the court amended its findings and allocated the Metz debt to husband.  The court then issued written permanent orders, which included requirements that husband pay (1) wife's attorney fees and (2) Metz's $8,878 in attorney fees related to the subpoenas and protective order.  The court issued amended permanent orders, correcting the nunc pro tunc date on the order and a child's birth date, and providing more detail regarding the sale of the marital home.

¶ 5      Husband filed a C.R.C.P. 59 motion seeking to amend the court's findings and judgment, arguing, among other things, that requiring him to pay both the Metz debt and wife's attorney fees was improper because the Metz debt was incurred by wife to pay

her attorney fees. The court denied husband's motion without addressing this issue.

## II. Double Recovery

¶ 6 Husband argues that the court improperly required him to pay the Metz debt — which included some of wife's attorney fees — while also requiring him to pay wife's attorney fees. We reverse the court's attorney fee award insofar as it requires husband to pay wife's attorney fees that are also included in the Metz debt.

### A. Metz Debt

¶ 7 As a preliminary matter, the district court didn't err in assigning the Metz debt to husband as part of the marital property division.

¶ 8 "Marital liabilities include all debts that are acquired and incurred by a husband and wife during their marriage." *In re Marriage of Jorgenson*, 143 P.3d 1169, 1171-72 (Colo. App. 2006). Debts incurred while the parties are separated — including debts to pay attorney fees — are marital. *In re Marriage of Burford*, 26 P.3d 550, 559 (Colo. App. 2001). When such debts have already been paid, they may be allocated in the property division through reimbursement. *Id.*

¶ 9 The district court has great latitude to equitably distribute marital property based upon the facts and circumstances, and we will not disturb its decision absent a clear abuse of discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication of the law. *Id.*

¶ 10 Here, wife presented an itemized list of how she spent the money Metz loaned to her. The list included entries related to the payment of her legal fees. The total amount of the Metz debt assigned to legal fees totaled over $61,000. These payments, already made by wife at the time of the permanent orders hearing, were a debt incurred while the parties were separated and thus constitute marital debt.

## B. Attorney Fees

¶ 11 Having assigned the Metz debt to husband, the court then ordered husband to pay wife's reasonable attorney fees totaling $105,155 pursuant to section 14-10-119, C.R.S. 2025. Although courts also have great latitude to craft attorney fee orders appropriate to the circumstances of a case, *In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006), the court here abused

4

its discretion.  *See In re Parental Responsibilities Concerning M.E.R-L.*, 2020 COA 173, ¶ 33 (reviewing the court's decision to award fees under section 14-10-119 for an abuse of discretion).

¶ 12    An attorney fee award is primarily intended to apportion costs and fees equitably.  *In re Marriage of Woolley*, 25 P.3d 1284, 1288-89 (Colo. App. 2001).  Attorney fees awarded pursuant to section 14-10-119 shouldn't be characterized as marital debt and apportioned under section 14-10-113, C.R.S. 2025.  *See In re Marriage of Rieger*, 827 P.2d 625, 624 (Colo. App. 1992) (attorney fees awarded pursuant to section 14-10-119 may not be considered non-challengeable marital debt pursuant to 14-10-113).

¶ 13    As an initial matter, the court followed the proper sequence in assigning marital debt first and then awarding attorney fees.  *See In re Marriage of de Koning*, 2016 CO 2, ¶¶ 21-23 (Colorado case law "contemplate[s] a specific sequence in which the division of property, maintenance, and attorney[] fees computations should occur.").  It's inequitable, however, for a court to double count a debt when dividing marital property.  *See In re Marriage of Cardona*, 2014 CO 3, ¶ 11 (Boatright, J., concurring in the judgment) (concluding that it was inequitable for the district court to count

twice the accrued leave of an employee spouse, first as a marital asset subject to division, and second as income for purposes of maintenance and child support). Here, though, the court's "double counting" didn't occur just within the marital property division; rather, the double-counting becomes apparent when we look at the property division and attorney fee award together, as an overlapping sum was counted once during the marital property division and once during the attorney fee award.

¶ 14 Relying on wife's attorney fees affidavit and its attached exhibit, the court awarded the full amount she requested for attorney fees. As noted before, the affidavit includes costs that wife had already paid using loans from Metz. But the court had already allocated this debt to husband. Because the record thus doesn't support awarding wife her full request for attorney fees given it's allocation of the Metz debt, the court abused its discretion. We therefore reverse this portion of the judgment and remand for the court to reconsider wife's attorney fee award, taking into account its allocation of the Metz debt (and the extent to which that debt included attorney fees).

### III.    Husband's Income

¶ 15    Husband next argues that the court erred when determining his income for the purposes of maintenance and child support. First, he asserts that the court erred in finding that his income should include money he inherited from his uncle's estate. Second, he contends that the court's income determination rested on inadequate findings. We disagree with both contentions.

### A.    Standards of Review

¶ 16    We review the court's maintenance and child support award for an abuse of discretion. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001); *In re Marriage of Tooker*, 2019 COA 83, ¶¶ 21, 27. And we review de novo the adequacy of the court's findings. *People v. Shifrin*, 2014 COA 14, ¶ 90 (concluding that "the adequacy of a trial court's findings . . . is tested by whether an appellate court can discern the lower court's rationale" and reviewing those findings de novo).

### B.    Inheritance

¶ 17    "Income" for purposes of determining maintenance and child support is defined at sections 14-10-114(8) and 14-10-115(5), C.R.S. 2025, respectively, which contain a list of income sources

that are included and excluded from such determinations. *See* §§ 14-10-114(8)(c)(I)-(V), 14-10-115(5)(a)(I)(A)-(Z) (income sources). The principal of a monetary inheritance is considered income if the recipient uses such funds to meet existing living expenses or increase their standard of living. *See In re A.M.D.*, 78 P.3d 741, 743-46 (Colo. 2003) (relying on income definition from the child support statute, which includes "monetary gifts" just as the maintenance statute does).

¶ 18    Husband testified that, in addition to his claimed earnings, he used the money he inherited from his uncle to cover monthly "expenses." Because husband testified that he used the inheritance to meet the family's existing living expenses, we perceive no abuse of discretion in the court's determination that the inheritance amounts should be considered part of father's gross income for the purpose of maintenance and child support. *See id.* at 746 (when spent for living expenses, inheritance is considered income).

C.    Adequacy of Findings

¶ 19    In making its income determination, the court found that husband's income fluctuated. Relying on *In re Marriage of Salby*, 126 P.3d 291, 299 (Colo. App. 2005), the court took an average of

husband's income over time and found his monthly income to be $20,000. The court explicitly relied on wife's forensic accountant's expert testimony to arrive at this monthly income figure.

¶ 20 Wife's forensic accountant testified that, considering husband's earnings and the distributions from his uncle's estate, his average monthly salary fluctuated between $19,408 to $25,658. The court chose an amount within this range — $20,000. Because we are able to discern the lower court's rationale and it's supported by the record, we perceive no basis for reversal.

## IV. Metz Attorney Fees and Credit Card Statements

¶ 21 Husband next contends that the court erred when it quashed his subpoenas to depose Metz and obtain his financial information, specifically statements from a credit card on which wife was a cosigner. Husband also claims that the court erred in awarding Metz his attorney fees incurred in connection with the subpoena litigation.

### A. Additional Facts

¶ 22 At wife's deposition in 2023, she stated that she had been added to two of Metz's credit cards and that she had used them to pay for the family's expenses. Later, at a status conference related

to husband's request to depose Metz, the court limited husband's deposition of Metz "to promissory notes and any dependable income or gifts to [wife]" (first discovery order).

¶ 23     Husband then subpoenaed Metz to produce "bank and credit account statements January 2022 – August 2023 for accounts in your name which [wife] is authorized to use or from which you spent money on [wife] or the Loecher children for living expenses or travel." Metz moved to quash the subpoena because it was "unduly burdensome" and required him to "produce nearly all of his financials as though he were a party and subject to 16.2 disclosure requirements." Before the period for husband's response had elapsed, a magistrate granted Metz's motion to quash this subpoena. The magistrate's order rested, in part, on husband's failure to comply with the court's order limiting the scope of the deposition.

¶ 24     Husband then served Metz with another subpoena. This one requested that Metz produce "bank and credit card statements of all gifts and financial contributions to [wife] since April 8, 2022, including amounts covered by the three promissory notes between Metz and [wife] and amounts charged on the two Metz credit card

accounts to which [wife's] name was added." After a hearing, the court granted Metz's motion to quash the second subpoena, "noting that [its first discovery] order cite[d] [a] very narrow" scope for Metz's deposition (second discovery order). The second discovery order also granted Metz's request for a protective order and indicated that the court would consider Metz's request for an award of his attorney fees at permanent orders.

¶ 25 At permanent orders, the court found that husband's subpoenas sought information beyond the court's limited scope for "the purposes of harassment and delay." The court also noted that, regardless, husband didn't use information from Metz's deposition at permanent orders. It then granted Metz's request for an award of attorney fees pursuant to section 13-17-102, C.R.S. 2025.

B. Notice of Appeal and Preservation

¶ 26 As an initial matter, Metz and wife argue that this issue wasn't properly preserved for appeal because his notice of appeal didn't indicate that he intended to appeal the discovery rulings and the award of attorney fees to Metz. But including an issue in the notice of appeal isn't necessary to provide Metz notice of husband's claims.

11

¶ 27    C.A.R. 3(d), which provides that the notice of appeal should include an "advisory listing of the issues to be raised on appeal," doesn't require that an issue be included in the notice of appeal in order to be raised on appeal so long as the issue is properly preserved in the trial court.  *Cf. Vikman v. Int'l Bhd. of Elec. Workers*, 889 P.2d 646, 658-59 (Colo. 1995) (holding that a division of this court erred in addressing certain issues because those issues had not been presented *either* in the trial court or in the appellant's notice of appeal).

¶ 28    Husband preserved his claims before the trial court. Husband's claim that the court's first discovery order didn't prevent him from seeking "a deposition to obtain/authenticate documents" was preserved in a brief filed with the court prior to its second discovery order.  And husband's claim that wife violated C.R.C.P. 16.2(e)'s mandatory disclosure requirements when she "refused to produce evidence of marital debt," including the requested credit card statements, was preserved in a motion filed before the second discovery order.

¶ 29    Because husband's arguments were preserved before the district court, we reject wife's and Metz's arguments that we can't or shouldn't address them.

## C.    Financial Information

### 1.    Relevant Law and Standard of Review

¶ 30    C.R.C.P. 16.2 governs discovery and disclosures in a domestic relations proceeding.  *In re Marriage of Gromicko*, 2017 CO 1, ¶ 27. The rule allows the district court to impose appropriate sanctions against a party who fails to comply with any of its provisions. C.R.C.P. 16.2(j); *see also* C.R.C.P. 16.2(e)(5) (sanctions may be imposed against a party who does not timely provide mandatory disclosures).  The court has considerable discretion to determine whether to impose sanctions for noncompliance with C.R.C.P. 16.2, and we won't disturb its decision absent an abuse of discretion. *M.E.R-L.*, ¶ 6.

### 2.    Analysis

¶ 31    Here, the first and second discovery orders are brief and general.  The second discovery order doesn't indicate whether the court specifically considered husband's arguments that the first discovery order was too restrictive or that wife violated mandatory

disclosure procedures by not producing the credit card statements. Although hearings were held in advance of both orders, husband didn't designate the transcripts of these hearings for the record on appeal. In the absence of transcripts, "we must assume that the [district court's] factual findings were supported by the evidence." *In re Marriage of Rivera*, 91 P.3d 464, 466 (Colo. App. 2004) ("[I]t is the obligation of the party asserting error in a judgment to present a record that discloses that error, because a judgment is presumed to be correct until the contrary affirmatively appears."). We therefore presume that the evidence supports the court's conclusion that the narrowed scope of the deposition was proper and that husband's subpoenas of Metz impermissibly sought information beyond their scope.

¶ 32   Similarly, the record on appeal is silent as to husband's argument regarding wife's failure to disclose the credit card statements pursuant to C.R.C.P. 16.2(e). Without a transcript, we must assume that the court concluded, in its considerable discretion, that wife's actions did not justify husband issuing broad discovery directed at Metz.

14

## D. Metz Attorney Fees

¶ 33    Husband argues that the court erred in ordering him to pay Metz the $8,878 in attorney fees. We understand husband's argument that he shouldn't have been ordered to pay this amount to rest entirely on his contention that the subpoenas were quashed in error and that the protection order unnecessary. Because we perceive no basis in the record to conclude that the court erred with regard to the subpoenas and protection order, we reject husband's invitation to reverse the court's award of attorney fees to Metz.

## V. Marital Property Determination

¶ 34    Husband makes two arguments related to the court's classification of his ownership interest in three real properties — the Char-Rose Townhomes, Investment International, and the Eighth Avenue Apartments — and a Roth IRA (collectively, the properties). We aren't persuaded by either argument.

### A. Relevant Law and Standard of Review

¶ 35    All property acquired during the marriage is presumed marital. *In re Marriage of Caparelli*, 2024 COA 103M, ¶ 10; § 14-10-113(2)-(3). Property acquired before the marriage may be separate. *Wright*, ¶ 8; *see* § 14-10-113(4). But even for separate property

15

acquired before marriage, the appreciation of a party's separate property during the marriage is a divisible asset. *See* § 14-10-113(4) (An asset acquired by a party before the marriage is considered marital property "to the extent that its present value exceeds its value at the time of the marriage."). The spouse claiming that property is premarital bears the burden of proving the property's separate character. *See In re Marriage of Smith*, 2024 COA 95, ¶ 41 (referring to property acquired during the marriage that a party intends to keep separate).

¶ 36 The classification of property as marital or separate is a legal determination based on the district court's factual findings. *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 8. While we defer to the court's factual findings, we review its legal determinations de novo. *Id.* The district court "has broad discretion to determine an equitable division of the marital assets and debts." *Id.* at ¶ 7. We won't disturb that division absent an abuse of discretion. *LaFleur v. Pyfer*, 2021 CO 3, ¶ 61.

### B. Alleged Lack of Findings

¶ 37 Husband first claims the court erred when it didn't make findings "about the dates of acquisition or origin of" husband's

16

ownership interest the properties. Husband points out that "neither party presented historical values for [his] interests in the [properties]." He further asserts that "[wife] never asked the [court] to order date-of-marriage valuations." Husband's argument misses the mark. As the party claiming that the properties were premarital and therefore separate, husband had the burden of proving that the properties retained their character as separate property. *See Smith*, ¶ 41. Husband also had the burden of providing the court with information necessary for it to determine how much of a property was separate, including the "dates of acquisition or origin."

¶ 38 Husband, however, didn't do so. Although husband argues on appeal that it was "undisputed that [he] owned [the properties] prior to the date of the marriage," the court found that "there was no amount and no testimony given regarding separate property [versus] what was accrued during the marriage." The record supports the court's findings.

- Husband testified at the permanent orders hearing that he never provided a "date of marriage statement" for the Roth IRA. Husband's financial statements valued it at $39,103 at the time of the hearing.

17

- Husband testified that he used a 2021 appraisal of Char-Rose to identify the amount corresponding to the percentage of his ownership, and he admitted that he did not provide a date of marriage valuation for that asset. Husband's sworn financial statements each list Char-Rose as a business interest, but neither provides a value, historic or otherwise.

- Husband listed Investments International on his second sworn financial statement, but he provided no known estimated value from either before or after the marriage.

- The court admitted a letter from husband in which he admitted to owning a "small percentage" of interest in the Eighth Avenue Apartments, but husband otherwise provided no evidence of its past or present value.

¶ 39 True, more than three months after the hearing, husband filed a copy of his 2009 income tax returns, which showed that husband had a premarital ownership interests in the properties. But husband makes no argument regarding how these assets retained their separate character throughout the marriage. *See Capparelli,* ¶ 10 ("The spouse claiming that property existing at dissolution is

separate because it was owned prior to the marriage has the burden of proof to trace the property back to the original premarital asset."). Nor do the tax returns provide premarital valuations of these assets.

¶ 40 We acknowledge that husband also argues that the court incorrectly designated his parents' bank accounts as marital property. However, he didn't sufficiently develop this argument, so we don't address it. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007).

¶ 41 Finally, husband correctly points out that a valuation and allocation for his ownership interest in the Eighth Avenue Apartments isn't listed in the written permanent orders. However, the court assigned this marital property a value and allocated it to husband in the oral ruling, which the court explicitly incorporated into its written order. Because the record supports the court's determinations, we perceive no abuse of discretion.

## C. Marital Property

¶ 42 Husband next contends that the failure "to calculate the increase in value of separate assets during a marriage does not

authorize [the court] to re-classify the assets as marital." We perceive no abuse of discretion.

¶ 43   Wife argues this issue wasn't properly preserved for appeal. She claims that husband improperly relies on his own C.R.C.P. 59 motion as his basis for preservation and, generally speaking, arguments raised for the first time in a post-trial motion aren't preserved for appellate review. *In re Marriage of McClure*, 2024 COA 70, ¶ 7. Wife also argues that identification of an argument in a trial management certificate, without more, is insufficient to preserve the issue for appellate review. *In re Marriage of Corak*, 2014 COA 147, ¶ 23.

¶ 44   Husband claims that his own Bates Stamp log is evidence of his submission of a 2009 income tax return. However, husband doesn't argue that this document contains information regarding the premarital value of the properties. In any event, because the documents it lists — including, for example, a 2021 appraisal of Char-Rose — aren't in the record, we can't ascertain any premarital value.

¶ 45   And even if we were to assume the argument was preserved, husband still doesn't prevail. He points to no authority, and we are

aware of none, requiring the court to calculate an increase in the value of allegedly separate property when the party shouldering the burden of establishing such value presents no evidence of the property's value at the time of marriage. The court, therefore, didn't abuse its discretion in determining that the properties' entire value was marital.

## VI.    Disposition

¶ 46     The court's permanent orders are reversed as to wife's attorney fees as stated in Part II.B. They are otherwise affirmed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE GOMEZ and JUDGE SULLIVAN concur.