80 P.3d 914 (2003)
In the Interest of K.M.B., a Child,
Upon the Petition of Michael S. Schwamberger, Appellant,
and
Concerning Marcia R. Schwamberger and Sharon Griffith, Appellees.
No. 02CA2038.
Colorado Court of Appeals, Div. IV.
October 9, 2003.
*915 Loren J. Randall, Highlands Ranch, Colorado, for Appellant.
Devra K. Carmichael, Parker, Colorado, for Appellee Marcia R. Schwamberger.
Jeri S. Williams, Castle Rock, Colorado, for Appellee Sharon Griffith.
Opinion by Chief Judge DAVIDSON.
In this proceeding concerning the minor child, K.M.B., Michael S. Schwamberger (stepfather) appeals from the trial court's dismissal of his petition for the allocation of parental responsibilities based upon the determination that he lacked standing. Stepfather also appeals from the trial court's award of attorney fees to Marcia R. Schwamberger (mother) and Sharon Griffith (grandmother). We reverse and remand for further proceedings.
Stepfather separated from mother on April 1, 2000, and filed a petition for dissolution on June 14, 2001. He filed this separate action on April 11, 2002, alleging that he was a nonparent and that K.M.B. was not in the physical custody of one of her parents. As grounds for his request for allocation of parental responsibility, stepfather claimed that he was the psychological father of K.M.B. and that he had continued to visit her regularly and frequently at the same time and in the same manner that he exercised parenting time with the parties' daughter. He requested that the court allocate parental rights, including parenting time, as appropriate to effectuate the best interests of K.M.B.
Mother and grandmother moved to dismiss stepfather's petition, alleging that stepfather lacked standing because K.M.B. had not resided with him since the separation. They also informed the magistrate that both stepfather and mother had temporarily delegated guardianship of the parties' daughter and K.M.B. to grandmother on March 10, 2001, for a period expiring on September 26, 2001, and that grandmother subsequently received an award of temporary custody of both children.
The magistrate found that stepfather failed to meet the threshold requirement of standing and dismissed his petition. Stepfather filed a timely motion to review, and the trial court upheld the dismissal. The trial court also imposed attorney fees against stepfather and his attorney.

I.
Stepfather first contends that the court erred in determining that he lacked standing. We agree.
Stepfather filed his petition under § 14-10-123, C.R.S.2002, which governs the commencement of proceedings for the allocation of parental responsibilities and provides, in pertinent part, as follows:
(1) A proceeding concerning the allocation of parental responsibilities is commenced in the district court or as otherwise provided by law:
(a) By a parent ... or
(b) By a person other than a parent, by filing a petition seeking the allocation of parental responsibilities for the child in the county where the child is permanently resident or where the child is found, but only *916 if the child is not in the physical care of one of the child's parents;
(c) By a person other than a parent who has had the physical care of a child for a period of six months or more, if such action is commenced within six months of the termination of such physical care; or
(d) By a parent or person other than a parent who has been granted custody of a child or who has been allocated parental responsibilities through a juvenile court order....
In dismissing the petition for lack of standing, the court relied upon § 14-10-123(1)(c). Stepfather argues that subparagraph (b) creates a basis for standing that is independent of subparagraph (c) and that, because it was undisputed that K.M.B. was in the care of her grandmother, he met the requirements of subparagraph (b). Thus, he contends, he was eligible to bring this action even though K.M.B. was not in his physical care. We conclude that he is correct based upon the plain language of the statute.
Our primary task in construing a statute is to determine and give effect to the intent of the General Assembly. In re Marriage of Long, 921 P.2d 67 (Colo.App.1996). Words and phrases should be given their plain and ordinary meaning. In re Marriage of Emerson, 77 P.3d 923 (Colo.App. No. 02CA1584, Aug. 14, 2003). A statute should also be interpreted to give consistent, harmonious, and sensible effect to all its parts. In re Marriage of Davisson, 797 P.2d 809 (Colo. App.1990).
If the language of a statute is clear and unambiguous, it must be applied as written, and the court need not resort to other rules of statutory construction. In re Interest of L.F., 56 P.3d 1249 (Colo.App.2002).
A division of this court has addressed the two provisions at issue, stating: "The former section permits the non-parent to commence the proceeding while the child is in the physical custody of the non-parent and the latter permits the proceeding to be commenced up to six months after physical custody has terminated." In re Custody of A.D.C., 969 P.2d 708, 709 (Colo.App.1998). This reading of the statute presumes that the two subsections operate together and that a nonparent must comply with each to establish standing.
However, we find nothing within the plain language of either subsection (b) or (c) of the statute that requires the two subsections to be applied together or that engrafts the physical care requirement imposed in the latter subsection upon nonparents who seek standing under the former subsection.
To the contrary, by its terms, subsection (b) establishes that any nonparent has standing as long as the child is not in the physical care of a parent. Cf. In re Custody of C.C.R.S., 872 P.2d 1337 (Colo.App.1993)(subsection (b) adopts a liberalized view as to the standing of nonparents to commence and to participate in custody proceedings), aff'd, 892 P.2d 246 (Colo.1995). We note that § 14-10-123(1)(b) was adopted verbatim from section 401(d) of the Uniform Dissolution of Marriage Act, and courts of other jurisdictions that have adopted the Uniform Act read the provision the same way. See, e.g., In re Custody of R.R.K., 260 Mont. 191, 859 P.2d 998 (1993).
Subsection (c), which was adopted later and is not contained in the Uniform Act, implements the Colorado General Assembly's recognition of "psychological parenting." It gives standing only to those nonparents who have had physical care of the child for at least six months and who have commenced a proceeding for parental responsibility no more than six months after the child left their physical care. In re Custody of C.C.R.S., supra. Subsection (c) acknowledges the important attachments that can arise when the child has been in the physical care of a nonparent, as well as the possible attenuation of the parent-child bond that can occur under such circumstances. In re V.R.P.F., 939 P.2d 512 (Colo.App.1997).
The Supreme Court has held that a statute permitting any person to petition for visitation with a child living with a parent violated the substantive due process right of that parent to rear his or her children. Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Thus, subsection (c) appropriately restricts standing because it applies even when the child's parents *917 have retained some measure of caretaking responsibility. Limiting the class of nonparents who may seek parental responsibilities to only those individuals who have had a recent or continuing role as a caretaker protects against undue interference with the parent-child relationship. See People in Interest of A.M.K., 68 P.3d 563 (Colo.App.2003)(natural parents have a fundamental liberty interest in the companionship, care, custody, and management of their children that gives rise to a presumption that the best interests of the child will be furthered by a fit natural parent).
Conversely, because standing may be acquired under subsection (b) only when a parent is no longer caring for the child, no such due process problem appears to be implicated. Furthermore, although a countervailing policy may exist against permitting an unlimited class of nonparents to seek parental responsibilities under subsection (b), such concern is outweighed by the "overriding policy of promoting the best interests of children." See In re Custody of C.C.R.S., supra, 872 P.2d at 1342. And, of course, no such parental responsibility award will be made unless a court in fact determines that it would be in the best interests of the child.
We conclude that, by its plain and unambiguous wording, § 14-10-123(1)(b) creates an independent basis for standing, which extends to any person as long as the child is not in the care of either parent. We further conclude that this interpretation is consistent with the policy considerations set forth by the General Assembly, that it creates no substantive due process concerns and that any other interpretation would be strained. See In re Marriage of Hannum, 796 P.2d 57 (Colo.App.1990)(if a statute is explicit and free from ambiguity, there is no room for interpretation or construction beyond giving effect to common and accepted meaning of words employed in the act, and resort should never be had to a strained interpretation).
In holding that the plain language of subsection (b) gives standing to stepfather, we do not view the interpretation articulated in In re Custody of A.D.C., supra, as dispositive. As relevant here, the holding of that case was that neither subsection (b) nor (c) imposed as a condition precedent a showing that the nonparent had become the psychological parent. Whether a nonparent was required to have physical custody to acquire standing under § 14-10-123(1)(b) appears to be merely tangential to that holding. Accordingly, the interpretation of subsection (b) in In re Custody of A.D.C. is dictum. See Lazuk v. Sch. Dist. No. 1, 22 P.3d 548 (Colo.App.2000)(dictum is not controlling precedent). However, to the extent that A.D.C. may be read to interpret subsection (b) to require a nonparent seeking allocation of parental responsibility to have physical custody, we decline to follow it.

II.
We also agree with stepfather that the trial court erred in awarding fees against him.
A court may award attorney fees in a domestic proceeding, including a parental responsibility action brought by a nonparent, under either §§ 13-17-102 or XX-XX-XXX, C.R.S.2002. See In re Marriage of Aldrich, 945 P.2d 1370 (Colo.1997)(because dissolution proceedings under article 10, title 14 are civil, it is permissible for a district court to award attorney fees under §§ 13-17-102, 14-10-119, or both); In re Custody of C.J.S., 37 P.3d 479 (Colo.App.2001)(party in a nonparent custody proceeding has standing to seek attorney fees under § 14-10-119).
When awarding attorney fees, the trial court must specifically set forth the reasons for the award, and if it fails to provide findings sufficient to afford review of the basis for the award, an appellate court must reverse the award and remand for further proceedings. Bob Blake Builders, Inc. v. Gramling, 18 P.3d 859 (Colo.App.2001).
Here, the parties appear to argue that the award of fees was made pursuant to § 13-17-102 and C.R.C.P. 11, although neither the magistrate nor the trial court identified the legal basis for the award. Accordingly, to the extent the award was entered as a sanction, it must be set aside in light of our holding that the trial court erred in dismissing stepfather's petition.
*918 Further, the record contains inadequate information concerning the pertinent factors that govern a § 14-10-119 determination. We note, however, that any request for fees under § 14-10-119, including a request for fees on appeal, may be considered by the court on remand.
We deny the request by mother and grandmother for attorney fees under C.A.R. 38(d). See Wood Bros. Homes, Inc. v. Howard, 862 P.2d 925 (Colo.1993).
The order dismissing stepfather's petition for lack of standing is reversed, and the case is remanded for additional proceedings as directed.
Judge NIETO and Judge GRAHAM concur.