The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 21, 2022

## 2022COA46

**No. 21CA0520, *Adoption of E.A.T.* — Family Law — Stepparent Adoption — Allocation of Parental Responsibilities — Psychological Parent**

In this stepparent adoption case, a division of the court of appeals holds that the decree of adoption does not vitiate a previously ordered allocation of parental responsibilities (APR) to a psychological parent; rather, the domestic relations court retains exclusive jurisdiction to modify or abrogate the APR order.

COLORADO COURT OF APPEALS        **2022COA46**

Court of Appeals No. 21CA0520
Morgan County District Court No. 20JA18
Honorable Kevin L. Hoyer, Judge

In re the Petition of R.M.C. III,

Appellant and Cross-Appellee,

for the Adoption of E.A.T., a Child,

and Concerning J.D.L.,

Appellee and Cross-Appellant.

ORDERS AFFIRMED

Division IV
Opinion by JUDGE TOW
Richman and Grove, JJ., concur

Announced April 21, 2022

Hampton & Pigott LLP, Natalie T. Chase, Broomfield, Colorado, for Appellant and Cross-Appellee

Marquez Law, Jason A. Marquez, Denver, Colorado, for Appellee and Cross-Appellant

¶ 1     In this stepparent adoption proceeding, R.M.C. III (adoptive father) appeals two separate orders dated March 5, 2021, issued by the Morgan County District Court (the adoption court), which vacated a prior order supplementing the adoption decree.  J.D.L. (psychological father)[1] cross-appeals the same orders, asserting that the court erroneously denied his request to intervene in the adoption action and to set aside the adoption decree.  Psychological father also challenges an April 8, 2021, order denying access to the adoption case file and register of actions.

¶ 2     We hold, as a matter of first impression, that a decree of adoption does not vitiate a prior allocation of parental responsibilities (APR) to a nonparent.  Rather, the court that issued the prior order retains jurisdiction related to the nonparent's APR.  We also hold that the nonparent is not entitled to receive notice of, and participate in, the adoption proceeding.  Consequently, we affirm the orders.

---

[1] A psychological parent is "someone other than a biological parent who develops a parent-child relationship through day-to-day interaction, companionship, and caring for the child."  *In re Parental Responsibilities Concerning E.L.M.C.*, 100 P.3d 546, 559 (Colo. App. 2004).

# I.    Background

¶ 3    Mother and A.R. (biological father) had E.A.T. (child) in 2015. In 2017, mother married psychological father. They separated shortly thereafter and mother began living with adoptive father. In 2019, psychological father filed for dissolution of marriage in the El Paso County District Court (the domestic relations court). In August 2020, the domestic relations court orally entered a decree dissolving the marriage and announced permanent orders, though neither the decree nor the permanent orders were reduced to writing at that time.[2]

¶ 4    In October 2020, before the written decree and permanent orders were entered in the dissolution of marriage case, adoptive father filed a petition in the adoption court for stepparent adoption. Mother and biological father consented to the adoption. Psychological father was not given notice of the adoption petition.

---

[2] For some aspects of the timeline, we take judicial notice of the filings and orders in the dissolution of marriage case, El Paso County District Court Case No. 2019 DR 30762. *See People v. Sa'ra*, 117 P.3d 51, 55-56 (Colo. App. 2004) ("A court may take judicial notice of the contents of court records in a related proceeding.").

¶ 5    Three weeks later, the domestic relations court entered the written decree and permanent orders finding, as relevant to this case, that psychological father was the child's psychological parent and granting him parenting time.

¶ 6    Shortly thereafter, the adoption court entered an adoption decree.  The court also entered a supplemental order, finding that

- the court had jurisdiction;

- psychological father had been previously granted parenting time through an action in El Paso County;

- there was no "scientific or biological" basis for psychological father to be "the actual psychological father of the minor child";

- because of the adoption, mother and adoptive father are parents who get to make parenting and visitation decisions; and

- psychological father would be permitted no further contact or parenting time with the child.

¶ 7    One month later, mother and psychological father appeared in the domestic relations court on a motion regarding parenting time. The domestic relations court recognized that an adoption decree

had been entered, making adoptive father the legal father. The court also acknowledged that, as a result of the adoption decree, there was "a competing order indicating that [psychological father was] to have no contact." But the domestic relations court concluded that it had original and continuing jurisdiction over the parental responsibilities concerning the child and denied modifications to the parenting time schedule set forth in the permanent orders.

¶ 8     Psychological father filed a motion in the adoption court to intervene in the adoption action. He asserted that the domestic relations court had previously entered permanent orders naming him the child's psychological parent and allocating certain "parental rights." He further argued that, after the adoption court had entered the adoption decree, the domestic relations court had entered another order that, among other things, reaffirmed its jurisdiction over the parental responsibilities concerning the child.

¶ 9     Psychological father also filed a motion in the adoption court to set aside the adoption decree. He asserted that, as a psychological parent, his rights "are equivalent to the rights of a legal parent." He argued that he had "a protected liberty interest

4

because he was granted parental rights" and was thus entitled to — but did not — receive notice of the stepparent adoption before the decree had been entered; therefore, his "parental rights" had been terminated without due process. He further contended that he was entitled to relief under C.R.C.P. 60(b)(1)-(3), (5).

¶ 10    On March 5, 2021, the adoption court denied both of psychological father's motions. In denying the motion to set aside the adoption decree, the court ruled that psychological father was not entitled to notice of the adoption proceeding and lacked standing to challenge the adoption decree because he was not a "natural parent" as defined in section 19-1-103(105), C.R.S. 2021. In denying the motion to intervene, the court ruled that the stepparent adoption statute, § 19-5-203(1)(f), C.R.S. 2021, does not provide for intervention by anyone who is not a natural parent; therefore, psychological father did not have an unconditional right to intervene under C.R.C.P. 24. The court also found that, because an order regarding psychological father's parenting time had been entered in the domestic relations court, psychological father had "failed to demonstrate that the stepparent adoption may impair or impede his ability to protect his interest in visitation with the child."

5

¶ 11 Because the domestic relations court had asserted original and continuing jurisdiction with regard to psychological father's parenting time, however, the adoption court also vacated the supplemental order. The adoption court reiterated that the domestic relations court was the only court that had jurisdiction over psychological father's parenting time with the child and disputes regarding such time should be resolved there.

¶ 12 Psychological father then filed a motion in the adoption court for access to the adoption case file and register of actions. He argued that he needed the case file and register of actions to appeal the orders denying his motions to intervene and set aside the adoption decree.

¶ 13 On April 8, 2021, the adoption court denied psychological father's motion for access to the adoption court file and register of actions. In doing so, the court found that under section 19-5-305, C.R.S. 2021, psychological father does not fall within the class of people permitted to access confidential adoption records.

## II. Adoptive Father's Contention

¶ 14 Adoptive father contends that the adoption court erred by vacating the supplemental order. Specifically, he argues that the

6

court's decision was based on an erroneous conclusion that the domestic relations court has continuing jurisdiction to determine psychological father's parenting time. We disagree.

¶ 15 Juvenile courts (including the juvenile divisions of district courts outside of the City and County of Denver) have exclusive original jurisdiction in proceedings concerning adoption. *See* § 19-1-104(1)(g), C.R.S. 2021; *see also* § 19-1-103(89); *In re C.A.O.*, 192 P.3d 508, 510 (Colo. App. 2008). District courts have jurisdiction over domestic relations matters, including APR. Colo. Const. art. VI, § 9; § 14-10-123, C.R.S. 2021. The district court's jurisdiction in a case, even if continuing, does not preclude the juvenile court from taking jurisdiction in another case involving other issues related to the same child. § 19-1-104(5) ("Where a custody award or an order allocating parental responsibilities with respect to a child has been made in a district court in a dissolution of marriage action or another proceeding and the jurisdiction of the district court in the case is continuing, the juvenile court may take jurisdiction in a case involving the same child if the child comes within the jurisdiction of the juvenile court.").

¶ 16    In this case, the domestic relations court was the district court that had original jurisdiction over the APR concerning the child, having entered an APR in the dissolution of marriage action. The adoption court was the juvenile court (or, more accurately, the juvenile division of the Morgan County District Court) that then took jurisdiction over the adoption-related issues in the stepparent adoption action. Thus, both courts properly exercised jurisdiction over certain issues related to the child.

¶ 17    To be sure, nothing in section 19-1-104(5) permitted the adoption court to modify an existing APR to a nonparent. In contrast, that section explicitly contemplates the juvenile court making such modifications in dependency and neglect cases and in juvenile delinquency cases. [3]

¶ 18    True, as adoptive father points out, the effect of the adoption decree is that he "is entitled to all the rights and privileges and is subject to all the obligations of a child born to" him. § 19-5-211(1), C.R.S. 2021. Further, "[t]he parents [are] divested of all legal rights

---

[3] The scope of the juvenile court's authority differs depending on whether it is sitting in an adoption case, a dependency and neglect case, or a delinquency case. This opinion addresses only what may be done by a juvenile court handling an adoption matter.

8

and obligations with respect to the child." § 19-5-211(2).[4]  But, contrary to adoptive father's contention, this language does not automatically vitiate the domestic relations court's order granting parenting time to psychological father.

¶ 19     Psychological father is not a "parent" for purposes of the adoption statute.  The Children's Code defines parent as "either a natural parent of a child, as may be established pursuant to article 4 of this title 19, or a parent by adoption." § 19-1-103(105)(a).  At oral argument, psychological father's counsel invoked the language from a different part of the same statute: "'Parent,' as used in sections 19-1-114, [C.R.S. 2021;] 19-2.5-501, [C.R.S. 2021;] and 19-2.5-611, [C.R.S. 2021,] includes . . . a parent allocated parental responsibilities with respect to a child." § 19-1-103(105)(b).  But this provision is unavailing for two reasons: (1) by its terms, this definition of parent applies to only three statutory sections, none of which is at issue here; and (2) it still refers to a "parent" — rather than a "person" — who has been allocated parental responsibilities.

---

[4] Because this was a stepparent adoption, the statute clarifies that the decree of adoption had no impact on *mother*'s rights and obligations.  § 19-5-211(3), C.R.S. 2021.

Significantly, the General Assembly has used the phrase "person to whom parental responsibilities have been allocated" elsewhere in the Children's Code. *See, e.g.*, § 19-1-111(2)(a)(I), C.R.S. 2021 (setting forth the conditions for appointing a guardian ad litem); § 19-1-114(1) (authorizing the juvenile court to "make an order of protection" setting forth "reasonable conditions of behavior" not only on a parent but on a "person to whom parental responsibilities have been allocated"). Clearly, when the legislature wants to include people in psychological father's position in the same group as parents, it knows how to do so. *See Meardon v. Freedom Life Ins. Co.*, 2018 COA 32, ¶ 46.

¶ 20 As it relates to psychological father's allocation of parental responsibilities, the "rights and privileges" adoptive father enjoys and the "obligations" to which he is subject are no more than those enjoyed by the child's biological father before the adoption. In other words, adoptive father is subject to the existing parenting time order, including the allocation of parenting time to psychological father. Adoptive father can no more ignore that order than biological father could have before the adoption.

¶ 21    In short, by entering the supplemental order, the adoption court improperly modified an existing APR order.  This was outside the purview of section 19-1-104(5) and in derogation of section 19-1-104(8)(a)(II).  By vacating the supplemental order, the adoption court correctly recognized that the domestic relations court had jurisdiction over psychological father and matters related to his parenting time.

¶ 22    Indeed, if adoptive father's position on the issues in this case were correct, a psychological parent would not be entitled to participate in an adoption proceeding, but his rights under an existing court order could nevertheless be taken away.  We cannot conclude that the legislature intended to create such a blatant due process problem.

¶ 23    Adoptive father argues that the supplemental order "was the only protection" he and mother had to protect their parental rights because — now that the order has been vacated — the domestic relations court can deny his and mother's rights to the child and grant rights to a nonparent.  But this argument ignores that the domestic relations court had already granted APR to psychological father.  Nothing in section 19-1-104 precludes adoptive father from

11

seeking to modify parenting time and asserting his *Troxel* presumption in the domestic relations court. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000).[5]

¶ 24     Accordingly, we conclude that the adoption court's order vacating the supplemental order was not only proper, but necessary.

### III.     Psychological Father's Contentions

#### A.     Motions to Intervene

¶ 25     Psychological father contends that the adoption court erred by denying his motion to intervene in the adoption action. In particular, he argues that he is a legal parent and section 14-10-123 gave him an unconditional right to intervene under C.R.C.P. 24(a). We disagree.

---

[5] At oral argument, adoptive father's counsel represented that adoptive father's attempt to intervene in the domestic relations court had been denied. This representation appears to be incorrect. According to a December 15, 2021, minute order in the domestic relations case, the parties stipulated that adoptive father would be joined as a respondent. Adoptive father's counsel was instructed to file a written motion if adoptive father sought to raise any issue related to parenting time, but no such motion appears to have been filed.

¶ 26 We review de novo the denial of a motion to intervene under C.R.C.P. 24. *In Interest of K.L.O-V.*, 151 P.3d 637, 640 (Colo. App. 2006).

¶ 27 C.R.C.P. 24(a)(1) provides that a person shall be permitted to intervene when a statute confers an unconditional right to intervene. "Although a statutory scheme may not expressly provide for intervention, the mechanism of intervention may be inherent in the scheme when it provides to a nonparty absolute redress against a party in the context of an existing lawsuit." *K.L.O-V.*, 151 P.3d at 640.

¶ 28 Initially, we reiterate that psychological father is not a legal parent. We recognize that the domestic relations court noted that psychological father had "significant rights that are equivalent to a legal parent." But the court's statement does not make psychological father a legal parent. It is undisputed that, prior to the adoption, mother and biological father were the child's legal parents. And the child can only have two legal parents. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 2.

¶ 29 We next conclude that section 14-10-123 does not expressly provide for intervention in a stepparent adoption. Section

14-10-123(1)(c) gives psychological father, as a nonparent, the ability to *seek* an APR. *See People in Interest of E.L.M.C.*, 100 P.3d 546, 553 (Colo. App. 2004). But this statute does not vest a nonparent with an absolute right to an APR. *See People in Interest of K.M.B.*, 80 P.3d 914, 917 (Colo. App. 2003) (noting "no such parental responsibility award [to a nonparent] will be made unless a court in fact determines that it would be in the best interests of the child.")

¶ 30 As we have observed above, issues concerning an APR are separate from a stepparent adoption. The statute clearly evinces a legislative intent that issues related to an APR be resolved by a district court handling the domestic relations matter rather than a juvenile court handling an adoption. Consequently, we conclude that section 14-10-123 does not confer an unconditional right to intervene under C.R.C.P. 24(a) in a stepparent adoption.

¶ 31 To the extent psychological father argues that he had a conditional right to intervene under C.R.C.P. 24(b) because his claim to parenting time and the stepparent adoption have a question of law or fact in common, we are unconvinced. Contrary to his contention, his rights to parenting time were not terminated.

14

Even though the adoption court initially terminated his parenting time through the supplemental order, the court subsequently corrected that error by vacating that order, and we have affirmed that decision.  And, to the extent there is overlap, the statute clearly requires that the APR issues remain in the domestic relations court.

¶ 32　　Accordingly, we conclude that the adoption court did not err by denying the motion to intervene.

### B.　Motion to Set Aside Adoption Decree

¶ 33　　Psychological father contends that the adoption court erred by denying his motion to set aside the adoption decree.  Specifically, he argues that the court should not have granted the adoption decree because the child was not available for adoption under section 19-5-203(1), C.R.S. 2021.  He also asserts that the court violated his due process rights.  We discern no basis for reversal.

¶ 34　　We review the denial of a C.R.C.P. 60(b) motion to set aside a judgment for an abuse of discretion.  *Gold Hill Dev. Co. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 65.  A court abuses its discretion if the ruling is manifestly arbitrary, unreasonable, or unfair, or based on a misunderstanding of the law.  *Id.*

15

¶ 35    We conclude that the child was available for adoption.  Section 19-5-203(1)(f) provides that a child may be available for adoption upon written or verified consent of the parent or parents where the child's parents were not married at the time the child was conceived or born.  Again, for purposes of the Children's Code, "[p]arent" means either a natural parent or a parent by adoption. § 19-1-103(105)(a).  At the time of the adoption, mother and biological father were the child's natural parents and they consented to the adoption.  Therefore, the child was available for adoption.  *See* § 19-5-203(1)(f).

¶ 36    We also conclude that the adoption court did not violate psychological father's due process rights.  We review procedural due process claims de novo.  *People in Interest of C.J.*, 2017 COA 157, ¶ 25.  To establish a violation of due process, one must first establish a constitutionally protected liberty interest that warrants due process protections.  *Id.*  To be sure, a legal parent has a fundamental liberty interest in the care, custody, and control of her child.  *Troxel*, 530 U.S. at 66.  To protect the parental liberty interest, due process requires the state to provide fundamentally fair procedures to a legal parent facing termination.  *A.M. v. A.C.,*

16

2013 CO 16, ¶ 28; *see also Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). These procedures include a legal parent receiving notice of the hearing, advice of counsel, and the opportunity to be heard and defend. *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 40.

¶ 37    But psychological father was not a legal parent facing termination of his parental rights. And his ability to protect his interests related to the APR remains intact, albeit in the domestic relations court. Therefore, the court did not have to ensure that psychological father received notice and the opportunity to be heard on the issue of stepparent adoption.[6]

---

[6] That being said, the General Assembly may wish to consider requiring notice of an adoption to a person to whom parental responsibilities have been allocated. Such a person — perhaps, as here, a psychological parent or a family member who was allocated parental responsibilities in lieu of terminating a parent's rights at the conclusion of a dependency and neglect case — may very well be able to provide an adoption court with valuable information related to the factors the court must consider when determining whether to grant the adoption request, including, among other things, the moral character of the party seeking to adopt the child, whether the adoption is in the best interest of the child, and whether the child has a significant relationship with a sibling or half-sibling that might be adversely impacted by the adoption. *See* § 19-5-210(2), C.R.S. 2021 (enumerating the factors an adoption court is to consider before granting an adoption request).

¶ 38    Accordingly, we conclude that the adoption court did not err by denying the motion to set aside.

## C.    Motion for Access

¶ 39    We next reject psychological father's contention that he is entitled to access to the adoption case file and register of actions. Psychological father is not within the class of persons who are permitted to receive access to adoption records under section 19-5-305(2)(b)(I)(A).[7]  While the statute permits a court to authorize disclosure of these records to other parties for good cause shown, § 19-5-305(1), there is no such good cause here.  Psychological father sought access to the records to assist in his appeal of the denial of his request to intervene and set aside the adoption for lack of notice.  Because this claim turns on the purely legal issue of whether psychological father is statutorily entitled to notice and to participate in the adoption case, psychological father can adequately brief the issue (and has done so) without access to the record.

---

[7] In addition, adoption cases are sealed and not accessible to nonparties.  Chief Justice Directive 05-01, Directive Concerning Access to Court Records § 4.60(b)(1) (effective Jan. 4, 2022).

18

¶ 40    Accordingly, we conclude that the adoption court did not err by denying the motion for access.

### IV.    Appellate Attorney Fees

¶ 41    Finally, we decline adoptive father's and psychological father's requests for appellate attorney fees under C.A.R. 39.5 and section 13-17-102, C.R.S. 2021.  Given our resolution of the issues, it cannot be said that either party's position was substantially groundless, frivolous, or vexatious.

### V.    Conclusion

¶ 42    The orders are affirmed.

JUDGE RICHMAN and JUDGE GROVE concur.