24CA1371 Marriage of Greenberg 09-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1371
La Plata County District Court No. 16DR30009
Honorable Nathaniel Baca, Judge

---

In re the Marriage of

Brad Howard Greenberg,

Appellee,

and

Anne Marie Greenberg,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HARRIS
Fox and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

---

The Law Firm of Anderson & Baker, LLC, Curtis Kofoed, Durango, Colorado, for Appellee

The Law Firm of Lisa Ward, LLC, Lisa Ward, Durango, Colorado, for Appellant

¶ 1    Petitioner, Anne Marie Greenberg (wife), appeals the district court's orders denying her motion to modify the maintenance she receives from Brad Howard Greenberg (husband) and her request for trial attorney fees.  We affirm.

## I.    Background

¶ 2    Husband and wife married in 2005 and divorced in 2017.  In the permanent orders, the court distributed property, and awarded maintenance, to wife as follows:

- the marital home, which had an equity value of $272,000;

- a vehicle worth approximately $25,000;

- investment and bank accounts worth approximately $436,000.

- retirement accounts worth approximately $525,000; and

- maintenance of $15,000 per month for seventy-two months (for a total of $1,080,000) plus 35% of the gross amount of any bonuses husband received during that period.

¶ 3    Before the maintenance period ended, wife filed a motion to extend it by an additional seventy-two months and requested attorney fees.  Following an evidentiary hearing, the court denied wife's motion (original modification order) but did not rule on her attorney fees request.

¶ 4    In denying the motion, the court found that

- wife has advanced degrees, is working to obtain a Ph.D., and has secured employment as a social worker, a job she described as her passion;

- wife's educational progress was not materially delayed by the COVID pandemic;

- although wife sustained a ski injury in 2018, by her own account, her health has vastly improved since then;

- wife is capable of working full-time but she chooses to work less than full-time to avoid burnout;

- despite wife's claim that she has spent 100% of her net maintenance on attorney fees, she is able to pay all of her bills and expenses without incurring debt;

- wife's net worth increased by over $500,000 during the maintenance period, "primarily due to her ability to invest the [excess] maintenance."

¶ 5    The court then considered the section 14-10-114(3)(c) factors affecting the amount and term of maintenance, including the "financial resources of the recipient spouse . . . and the ability of the recipient spouse to meet . . . her needs independently," § 14-

2

10-114(3)(c)(I); the "distribution of marital property," § 14-10-114(3)(c)(IV); and the parties' employment and employability, § 14-10-114(3)(c)(V). The court determined that wife's economic circumstances had improved, not worsened, during the seventy-two-month maintenance period; her financial resources were substantial and she was able to meet her needs independently; and her income would increase as she obtained additional credentials and her career progressed. The court also noted that wife is a beneficiary of a trust. Accordingly, the court concluded that a modification was not warranted.

¶ 6     Wife filed a C.R.C.P. 59(a) motion to reconsider and renewed her request for attorney fees. Wife asserted that the record did not support the court's findings that her net worth had increased from investing excess maintenance and that she had access to trust funds.

¶ 7     The court modified its findings but again denied wife's motion to reconsider and denied her request for attorney fees (revised modification order).

¶ 8     In its revised modification order, the court acknowledged that it had erred by attributing wife's increased wealth to maintenance

investments but nonetheless maintained that wife's net worth had indeed increased by around $500,000 — through her home's appreciation and gains in her retirement fund. The court then looked to wife's reported expenses and found that there was no "clear error in finding that wife has a sufficiently strong financial position from her assets, investments, retirement, and her chosen career . . . to meet her actual reasonable needs."

¶ 9 The court also revised its findings related to wife's status with respect to her family's trust. The court noted that "the evidence indicates that [wife] is not currently receiving anything from the trust, and no issues hinge on whether there is or is not a trust."

¶ 10 Finally, the court denied the request for attorney fees, finding that "both parties remain in strong financial positions to pay their attorney[] fees."

## II. Maintenance Modification

¶ 11 Wife argues that the court abused its discretion by denying her motion to modify maintenance and her C.R.C.P. 59(a) motion. We perceive no basis for reversal.

## A. Relevant Law and Standard of Review

¶ 12    "A modification of maintenance requires a showing of changed circumstances so substantial and continuing as to make the existing terms unfair." *In re Marriage of Kann*, 2017 COA 94, ¶ 73; § 14-10-122, C.R.S. 2025. "Whether circumstances have sufficiently changed lies within the sound discretion of the trial court based on the facts presented." *Kann*, ¶ 75. "[A] motion to modify requires the court to consider all relevant circumstances of both parties." *In re Marriage of Young*, 2021 COA 96, ¶ 37. "The court may consider the guideline amount and term of maintenance and the statutory factors set forth in [section 14-10-114(3), C.R.S. 2025] . . . ." § 14-10-114(5)(a), C.R.S. 2025. "The party seeking a modification has a heavy burden of proving that the provisions have become unfair under all relevant circumstances." *Kann*, ¶ 74.

¶ 13    Absent an abuse of discretion, we will not disturb the court's ruling. *Id.* at ¶ 75. A district court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if the court misapplies the law. *Young*, ¶ 7. In assessing whether the district court's decision is manifestly arbitrary, unreasonable, or unfair, "we ask not whether we would have reached a different

5

result but, rather, whether the [district] court's decision fell within the range of reasonable options." *Hall v. Moreno*, 2012 CO 14, ¶ 54.

¶ 14 C.R.C.P. 59 gives a district court full power to correct any and all errors committed. *Blue Cross of W. N.Y. v. Bukulmez*, 736 P.2d 834, 840 (Colo. 1987).

### B. Revised Findings Do Not Require A Revised Disposition

¶ 15 Wife argues that, when the court revised its findings in response to her C.R.C.P. 59 motion, it had to amend the judgment. But that would be true only if the revised findings no longer supported the decision. And here, the district court revised its findings and determined that, based on the revised findings, wife had failed to meet her burden to show circumstances warranting modification of the maintenance order.

¶ 16 Although the court erred by attributing wife's financial gains to investments, the determination that wife's net worth increased by approximately $500,000 (to $1.7 million) during the maintenance term was accurate.

¶ 17 And the court acknowledged that wife was not receiving any money from the trust but nonetheless determined that she could support herself independently.

6

¶ 18    Because the court revised its findings and then redetermined that wife was not entitled to modification of the maintenance order, the court's initial erroneous findings do not provide a basis for reversal.

### C. No Substantial and Continuing Changes Warranting Modification

¶ 19    Wife also argues, more generally, that the court erred by concluding that a modification to the maintenance order was not warranted. *See* § 14-10-122(1)(a). Because the court's findings are supported by the record, we perceive no abuse of discretion.

### 1. Husband's Income

¶ 20    Wife contends that the maintenance order should be modified because husband's monthly income increased to more than $70,000 during the maintenance term, while wife's monthly income was only $3,800.

¶ 21    The district court could have considered husband's increased income as a factor in determining changed circumstances, but it was not required to, *see In re Marriage of Nelson*, 2012 COA 205, ¶ 37, and, even if it did, the court was not then required to conclude that because husband's financial position had improved,

the original order had become unfair.  The issue in a motion to modify "is not whether, based on the current financial circumstances of the parties, the court would have awarded the same amount as originally awarded." *Young*, ¶ 16.  Instead, the issue "is whether the terms of the initial award have become unfair." *Id.*  The original maintenance order recognized that husband had, and would continue to have, much greater earning potential than wife.  Therefore, as the district court noted, the property distribution and original maintenance award accounted for that discrepancy.

¶ 22    We conclude that the court did not abuse its discretion in determining that husband's income was not a changed circumstance warranting modification of the original maintenance order.

## 2.    Wife's Injury

¶ 23    The court found that wife's 2018 ski injury was not a changed circumstance that required modification of maintenance because it "did not prevent [her] from obtaining an advanced degree, obtaining work in her chosen field [of social work], and working regularly in

her chosen field." Wife contends that the court's finding amounts to an abuse of discretion, but we disagree.

¶ 24 There was no evidence that wife's five-year-old injury presented a continuing impediment to her ability to work or otherwise care for herself. An expert in functional limitations assessments testified that wife could work eight hours per day as a social worker. Another expert opined that wife could work in a full and unrestricted capacity. That expert also opined that wife reached maximum medical improvement in January 2019 with a mild left knee sprain. None of wife's witnesses testified that the ski injury prevented her from working or participating in any other life activities. Nor did wife testify that the injury rendered her unable to work. Indeed, she acknowledged that she worked thirty to thirty-four hours a week but did not work full-time because she wanted to minimize stress and burnout.

¶ 25 Because the record supports the court's determination, we perceive no abuse of discretion.

### 3. Delay in Wife's Education

¶ 26 Wife argues that the COVID-19 pandemic was a substantial and continuing change that prevented her from obtaining her

9

desired Ph.D. degree within the maintenance term, rendering the original maintenance order unfair. The court disagreed, finding that wife "is [even without a Ph.D.] positioned to see an increase in her income as she obtains additional credentials."

¶ 27 The record shows that during the maintenance period, wife returned to school and earned both an undergraduate degree and a master's degree without incurring any debt. The only evidence of delay on which wife relies is that she could not finish her practicum hours during the 2020 spring semester. Nonetheless, she graduated in 2022, as anticipated. And she testified at the hearing in February 2024 that she expected to become a licensed clinical social worker (LCSW) in February or March 2025, and that she was then likely to earn about fifty percent more per hour.

¶ 28 On this record, the court could reasonably have determined that any slight delay in wife's ability to obtain an advanced degree did not warrant the requested modification.

### D. Wife's Reasonable Needs Were Met

¶ 29 The crux of wife's argument is that while husband increased his earnings and maintained an extravagant lifestyle, she struggled to make ends meet.

¶ 30 But as wife's evidence showed, she spent anywhere between $143,638 and $469,072 annually during the maintenance period, amounts that the court found did not "reflect alignment with actual reasonable expenses." Her net worth nonetheless increased and she did not accumulate any debt. Wife says she had to withdraw money from her investment account causing it to decrease by approximately $176,000 during that time, but that is because she spent almost $700,000 on attorney fees from 2017 to 2023.

¶ 31 Wife counters that even setting aside the attorney fees, she could not cover her expenses on her salary. At the hearing, wife testified that, not counting legal fees, her monthly expenses totaled $3,648 ($2,067 for mortgage and taxes on her home; $180 for gas and electric bills; $160 for water and sewer bills; $831 for food; $360 for fuel and vehicle maintenance; and $50 for health insurance). At the time, she was earning net income from employment of $2,866 per month ($25 per hour for 33 hours per week minus deductions). By this accounting, wife had a deficit of $782 per month.

¶ 32 According to wife, however, she anticipated that within a year — by February 2025 — she would be an LCSW and her hourly rate

would increase from $25 to $35-$40, meaning that even if she continued to work part-time, her gross monthly income would increase by approximately $1,500. And she testified that once she obtained her Ph.D., she could expect to earn $50,000 more than her current (non-LCSW) salary, at which point she would be "fully self-supporting."

¶ 33 Relying on *In re Marriage of Weibel*, 965 P.2d 126, 129 (Colo. App. 1998), wife argues she is entitled to more than the minimum required to cover her essential expenses. But if attorney fees are removed from wife's accounting of her maintenance expenditures, her maintenance would have provided her with approximately $60,000 surplus per year. Accordingly, excluding wife's use of maintenance to pay attorney fees, wife would not have "deplete[d] a substantial portion of her share of the marital property" so as to compel an extension of maintenance. *In re Marriage of Dwyer*, 825 P.2d 1018, 1020 (Colo. App. 1991).

¶ 34 We therefore perceive no abuse of discretion in the court's decision not to extend wife's maintenance.

12

### III. Trial Attorney Fees

¶ 35 Wife argues that the court abused its discretion when it denied her request for attorney fees "without making findings which would justify such a denial." Specifically, she asserts that the court should have relied on "the gross disparity in the parties' financial resources, incomes, and income earning ability." We are not convinced.

### A. Relevant Law and Standard of Review

¶ 36 Under section 14-10-119, C.R.S. 2025, "[t]he court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount" for the other party's costs, including attorney fees, of maintaining dissolution proceedings. *See In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006) (The statute empowers courts to "equitably apportion costs and fees between parties based on relative ability to pay."). The decision whether to award fees under the statute is discretionary; we will not disturb such a decision absent a showing of an abuse of that discretion. *In re Marriage of Davis*, 252 P.3d 530, 538 (Colo. App. 2011); *see Gutfreund*, 148 P.3d at 141 (noting

that district courts have "great latitude to craft [attorney fee] orders appropriate to the circumstances of a given case").

¶ 37    In awarding fees, a court must make findings concerning the parties' relative incomes, assets, and liabilities; and it must apportion fees based on the statute's equitable purpose, explaining how and why it arrived at the specific amount of the award. *In re Marriage of Aldrich*, 945 P.2d 1370, 1378 (Colo. 1997); *see also In Interest of K.M.B.*, 80 P.3d 914, 917-18 (Colo. App. 2003) ("When awarding attorney fees, the trial court must specifically set forth the reasons for the award . . . .").

¶ 38    While we review the court's decision to award fees under the statute for an abuse of discretion, *In re Parental Responsibilities Concerning M.E.R-L.*, 2020 COA 173, ¶ 33, we review the court's factual findings for clear error and its legal conclusions de novo, *In re Marriage of de Koning*, 2016 CO 2, ¶ 17.

## B.    Analysis

¶ 39    In denying wife's request for attorney fees, the court found that mother had "the means necessary to maintain herself and carry on the litigation." The court did not apportion fees strictly according to the parties' incomes. Instead, it found no reason that

"a wealthy party should be able to engage in litigation for free, in the name of equity, because the other side is wealthier."

¶ 40  Because the court made the required findings regarding the parties' financial situations and explained how it arrived at the specific amount of the award, we perceive no abuse of discretion. *See Marriage of Weibel*, 965 P.2d 126, 130 (Colo. App. 1998) ("Because the magistrate found [in a motion to modify maintenance hearing], despite the disparity of income, that wife had considerable assets, we do not find an abuse of discretion in its order requiring each party to pay his or her own fees.").

## IV.  Appellate Attorney Fees

¶ 41  Wife requests appellate attorney fees pursuant to section 14-10-119, C.R.S. 2025, due to the disparity in the parties' economic circumstances.  We deny the request.

¶ 42  Under C.A.R. 39.1, we have the discretion to "determine entitlement to and the amount of an award of attorney fees for the appeal or may remand those determinations to the lower court."  We frequently remand to the district court to determine the appropriateness of appellate attorney fees under 14-10-119.  *See, e.g., In re Marriage of Thorburn*, 2021 COA 80,  ¶ 58 ("[B]ecause the

district court is better equipped to resolve the factual issues concerning the parties' current financial circumstances, we remand the issue for its consideration.").  But in this case, the district court determined that "both parties remain in strong financial positions to pay their attorney[] fees" and rejected wife's request for trial court fees.  We have affirmed that ruling.  Moreover, the decree of dissolution was entered more than eight years ago, and there is no indication that wife's financial circumstances have limited her ability to litigate whatever issues she deems important.

¶ 43    Given these circumstances, we perceive no benefit in remanding this case to the district court for additional findings and instead deny wife's request for appellate attorney fees.

## V.    Disposition

¶ 44    The judgment is affirmed.  The request for appellate attorney fees is denied.

JUDGE FOX and JUDGE SCHUTZ concur.